2021 IL App (2d) 200380
No. 2-20-0380
Opinion filed May 28, 2021

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF HANOVER PARK, | ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19-MR-1250 |
| THE BOARD OF TRUSTEES OF THE VILLAGE OF HANOVER PARK POLICE PENSION FUND, THE METROPOLITAN ALLIANCE OF POLICE CHAPTER 102, RICK COLUCCI, ANTHONY KONECK, MICHAEL KOZENCZAK, CINDY LEON, and JENNIFER SMITH, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1     This matter comes before us on administrative review from the circuit court of Du Page County, which affirmed the decision of defendant the Board of Trustees of the Village of Hanover Park Police Pension Fund (Board) that holiday pay under the collective bargaining agreement (CBA) dated May 1, 2013, to April 30, 2016, between plaintiff, the Village of Hanover Park (Village), and defendant the Metropolitan Alliance of Police Chapter 102 (MAP), is pensionable salary for purposes of calculating pension benefits. Individual defendants Rick Colucci, Anthony

Koneck, Michael Kozenczak, Cindy Leon, and Jennifer Smith (collectively, retired officers), are retired patrol officers of the Village's police department, were members of MAP, and are represented by MAP on appeal.

¶ 2     The Village now appeals, contending that the Board's decision was clearly erroneous. MAP, the Board, and the retired officers (collectively, defendants) have filed a joint brief in opposition. Because the evidence before the Board conclusively established that holiday pay under the CBA is not "fixed" compensation as defined in section 4402.30 of Title 50 of the Illinois Administrative Code (Administrative Code) (50 Ill. Adm. Code 4402.30 (eff. Apr. 9, 1996)), we reverse.

¶ 3                                    I. BACKGROUND

¶ 4     The Board is an administrative agency created under section 3-128 of the Illinois Pension Code (Pension Code) (40 ILCS 5/3-128 (West 2018)). As authorized by section 3-132 of the Pension Code (*id.* § 3-132), it controls and manages the Village of Hanover Park Police Pension Fund (Pension Fund), and it administers retirement benefits to the Village's retired police officers. MAP represents the full-time police patrol officers below the rank of sergeant within the Village's police department.

¶ 5     The distribution of and eligibility for holiday pay for police patrol officers employed by the Village is established in article 6 of the CBA. Section 6.1 of the CBA establishes a list of nine days that "[a]ll police patrol officers covered by [the CBA] shall have *** considered as holidays." Section 6.2, in turn, generally governs how holiday pay is awarded to patrol officers. It provides, pertinently:

> "All police patrol officers shall receive eight (8) hours of holiday pay at their
>
> straight time hourly rate whether the holiday is worked or is a regularly scheduled day off.

Payment for the nine (9) holidays during a calendar year shall be made the first payroll period of November. Payment shall be made in a "lump sum" and shall be included in the officer's regular payroll check. Payment shall be based on the straight time hourly rate at the time of the holiday for each respective police patrol officer. Appropriate deductions shall be withheld."

¶ 6    Section 6.3 governs the eligibility requirements for police patrol officers to receive holiday pay. Although the instant dispute concerns the CBA in effect from May 1, 2013, to April 30, 2016, the parties agree that section 6.3 was utilized in the previous collective bargaining agreements between them and that this section has remained unchanged since at least 2011. Section 6.3 provides:

"In order to be eligible for holiday pay, a police patrol officer must work his/her last full scheduled working day preceding and the first full scheduled working day immediately following the day observed as a holiday unless the employee's total absence from work is excused by his/her Department Head and is chargeable to an authorized paid leave. Authorized paid leave shall include vacation, personal day, compensatory time, employment disability leave of less than six months, or approved sick leave. Employees who are off work due to illness, but have insufficient sick time to cover the illness, who are suspended, who are on an off-duty disability or employment disability in excess of six months, who are on pension, or any other inactive payroll status shall not be eligible for holiday pay."

¶ 7    For clarity, we outline in chronological order the pertinent bargaining history between the parties, as well as the several instances when the Public Pension Division (Pension Division) of

the Illinois Department of Insurance (Department) weighed in on the general issue presented in this appeal.

¶ 8                           A. Department Audit and the Village's Response

¶ 9      Between 2009 and 2010, the Pension Fund underwent a compliance audit by its regulator, the Pension Division. See 40 ILCS 5/1A-104 (West 2008) ("[t]he Division shall make periodic examinations and investigations of all pension funds established under this [Pension] Code and maintained for the benefit of employees and officers of governmental units in the State of Illinois"). As part of its examination, the Pension Division "spot checked" pension deductions from the salary of active participants of the Pension Fund under the then-current CBA, which was in effect from November 1, 2005, to October 31, 2008.

¶ 10     In a written report dated February 22, 2010, the Pension Division concluded, pertinently, that holiday pay under the then-current CBA was pensionable salary.[1] In reaching this determination, the report quoted at length section 6.2 of the then-effective CBA, which it noted provided all patrol officers with holiday pay for nine enumerated holidays. The report also noted that section 6.2 stated that "appropriate deductions shall be withheld; however, police pension deductions shall not be withheld." The report found, however, that "in the above circumstances this type of pay is considered salary, in accordance to [sic] Section 4402.30" of Title 50 of the Administrative Code. The report concluded that holiday pay under the then-current CBA should have been considered compensation for purposes of calculating pension contributions and pension

_____

[1] The written report contained several other findings and specific recommendations for the Board to ensure compliance with the Pension Code, but those findings and recommendations are not pertinent to the appeal.

benefits. In a letter enclosed with the report, the Pension Division invited the Board to respond in writing to indicate whether it agreed with the findings or, if it did not agree with the findings, the Board could request a hearing prior to the report being made available to the public.

¶ 11     The Board thereafter disagreed with the findings of the report regarding holiday pay, among other findings not relevant here. Specifically, the minutes from the Board's April 20, 2010, meeting, at which the Board discussed the report at length, state that the "[t]he [B]oard determined holiday pay was not apart [*sic*] of base pay and was a contractual agreement the [V]illage pays to police officers." On May 24, 2010, Board president George Sullivan sent a letter to the Pension Division documenting the Board's disagreement with the report findings. Pertinently, the letter stated, "[t]he Board discussed this with representatives from the Village Human Resource Department and [MAP]. It was determined that Holiday Pay is a contractual obligation between the Village *** and is not considered base pay." Sullivan enclosed a copy of article 6 from the then-current CBA with the letter.

¶ 12     On June 23, 2010, the Pension Division replied that it would place Sullivan's letter "on file," but it stated that it denied several of Sullivan's objections, including the Board's objection concerning holiday pay. It explained, "[t]he Board of Trustees of the Hanover Park Police Pension Fund in conjunction with Illinois statutes should be the sole arbitrators as to what salary is pensionable and what is not."[2]

---

[2] The Village posits that this comment is responsive to the portion of Sullivan's letter where he stated that the Board discussed the matter with the Village's human resources department and MAP.

¶ 13    Based on the Board's determination that holiday pay was not pensionable, the Village continued not to withhold pension contributions from holiday pay and calculated the pensions of its retiring officers using salary figures that did not include holiday pay.

¶ 14        B. Negotiations Between the Village and MAP Leading to the CBA

¶ 15    In March 2013, the Village and MAP engaged in negotiations for a successor agreement to the CBA that was in effect from 2011 to 2013. Using the prior agreement as a starting point, MAP initially proposed, pertinently, that (1) the phrase "[h]owever, police pension deductions shall not be withheld" be removed from section 6.2 and (2) section 6.3 be removed in its entirety. On September 16, 2013, the parties executed a "tentative agreement," wherein they agreed to remove from section 6.2 the phrase "[h]owever, police pension deductions shall not be withheld." However, the parties agreed to leave section 6.3 in the agreement, unchanged. As such, under the tentative agreement, the only revision to article 6 of the CBA was the removal of the prohibition on the Village from withholding pension contributions from its officers' holiday pay. The tentative agreement was later incorporated into the ratified CBA.

¶ 16    To clarify and emphasize the agreed-upon amendment to section 6.2, we recite section 6.2 in its entirety as it appeared in the prior agreement, but we strike through the language that was removed from the CBA:

>   "*Section 6.2* All police patrol officers shall receive eight (8) hours of holiday pay at their straight time hourly rate whether the holiday is worked or is a regularly scheduled day off. Payment for the nine (9) holidays during a calendar year shall be made the first payroll period of November. Payment shall be made in a 'lump sum' and shall be included in the officer's regular payroll check. Payment shall be based on the straight time hourly rate at the time of the holiday for each respective

police patrol officer. Appropriate deductions shall be withheld~~, however, police pension deductions shall not be withheld~~. It is understood and agreed that any officer terminating between the date this lump sum payment is made and the following December 31st, shall have deducted from his/her final pay check any payments already received for any Village holiday in November and December which occurs after the effective date of the officer's termination."

¶ 17    MAP's negotiator, Richard Reimer, later explained during arbitration proceedings that MAP sought to modify section 6.2 to compel the Village to withhold pension contributions from each officer's holiday pay so that MAP could then seek a determination from the Board regarding whether holiday pay under the CBA was pensionable. Reimer explained,

"All we want to do right now is we want to crawl before we can walk. We need to have the [pension contribution] deductions right now. According to the language of [section] 6.2, there [are] no deductions, so we had a long talk [during negotiations with the Village] about that."

He continued,

"I knew during these negotiations that I wasn't going to hit a home run and get the Village to say, 'a-ha, it's pensionable.' All I wanted them to do was take the first step and withhold the 9.91% [in statutory pension contributions per section 3-125.1 of the Pension Code (40 ILCS 5/3-125.1 (West 2012))]. That way, once I had a 9.91% withholding *** I could go to the pension board. And if [the Board] didn't agree to accept that [holiday pay] was pensionable, what I would do then was file a declaratory judgment action against the pension board."

He further explained that

"it was not the intention of this [March 2013] bargaining session to have this village agree that holiday pay was pensionable. *** I understood that wasn't what we were talking about. I just communicated the first step we needed to address is that we need to have withholdings because without the withholdings there can't ever be any pensionable salary of holiday pay."

¶ 18    During negotiations, as found by the arbitrator, Village attorneys "made clear" statements to MAP that the Village did not agree to make holiday pay pensionable, and they stated their belief that holiday pay was not pensionable, because section 6.3 of the CBA had not changed. The Village did not believe that the removal of the language from section 6.2 would achieve the result MAP was seeking, because receipt of holiday pay remained conditioned on the officer meeting the eligibility requirements in section 6.3 (which remained unchanged) and was therefore not pensionable under the Pension Code.

¶ 19    On October 15, 2013, the Board unanimously entered into its minutes a letter drafted by Sullivan to the Board concerning holiday pay. He wrote the letter "so that it can be reviewed and placed into the minutes of the *** Board [m]eeting." Sullivan wrote, pertinently:

"The *** Board[']s [a]ccounting [f]irm *** advised the [holiday] pay was not pensionable because *** section 6.3 of the current [CBA] allowed for management to deny an officer holiday pay for certain criteria. The accounting firm's decision was also verified by Scott Brandt[,] Chief Administrator for [the Pension Division]. I immediately contact[ed] [Brandt] on September 20, 2013, concerning this issue and advised him that the fund received non-compliance *** for this same reason. I advised Mr. Brandt of my rebuttal letter and he stated that it was his view that the examiner in 2009 did not completely view *** Section 6.3. He further advised [that] if [section 6.3] was examined, the fund would

never have been found non-compliant for holiday pay. Mr. Brandt advised he could not reverse the earlier audit, but would make notation of our conversation in the file so that future auditors would be aware of the correction, and that the 2009 audit finding would not be used against the fund. *** I am very happy with this finding and that [the Board] *** reviewed the *** audit thoroughly and made the proper decision when we rebuffed the audit's original findings."

¶ 20          C. Pension Division's January 2015 Advisory Opinion

¶ 21    On December 4, 2014, the Village sent to the Pension Division a letter requesting an advisory opinion concerning "whether this annual [holiday pay] payment is pensionable or not." See 40 ILCS 5/1A-106 (West 2014) (which permits the Pension Division to "render advisory services to the pension funds on all matters pertaining to their operations"). In the letter, the Village stated that it "has always treated [holiday] pay as non-pensionable[,] and the pay has not been calculated as part of the employee's base wage." The Village enclosed with the letter a copy of the CBA, and it highlighted that section 6.3 set forth the "eligibility requirements" officers must meet to receive holiday pay. As defendants noted before the Board and on appeal, the letter did not disclose that the eligibility requirements in section 6.3 of the CBA "referencing work on the day before and the day after a holiday" were not enforced from 2007 through 2014, as the parties later stipulated at arbitration.

¶ 22    In a reply dated January 28, 2015, and drafted by Brandt, the Pension Division opined "that the language in Article Six, Holidays, Section 6.3, of the [CBA] attached to your December 4, 2014 letter, disqualifies the holiday pay granted under Section 6.2 of the [CBA] from being considered part of salary for pension purposes." The Pension Division explained that "[s]ection 6.3 does not meet the definition of '[f]ixed' " under the Administrative Code because it "is not a

predetermined amount which can be determined through an examination of the appropriation ordinance, plans or agreements establishing salary." See 50 Ill. Adm. Code 4402.30 (eff. Apr. 9, 1996). As such, in the Pension Division's view, "holiday pay [under the CBA] is not to be considered salary for pension purposes." As highlighted by the Village on appeal, this advisory opinion is consistent with Brandt's earlier statements to Sullivan as memorialized in the memo placed into the Board's meeting minutes on October 15, 2013.

¶ 23                              D. MAP Prevails at Arbitration

¶ 24      Following the ratification of the CBA, the Village did not deduct any pension contributions from any officers' holiday pay in November 2013, November 2014, or November 2015, and several bargaining unit members filed near-identical grievances concerning this issue. These grievances reflected MAP's effort to compel the Village to withhold pension contributions from holiday pay.

¶ 25      The parties agreed to consolidate the grievances, and an arbitration hearing was held on May 19, 2016. The sole issue before the arbitrator was whether the removal from the CBA of the prohibition against deducting pension contributions from holiday pay meant that the Village was contractually required to deduct pension contributions from holiday pay. During arbitration, the parties entered several stipulations. Pertinent here, the parties stipulated that, (1) "[f]rom 2007 through December 2, 2014, the portion of Section 6.3 referencing work on the day before and the day after a holiday was not enforced and no deductions were made from holiday pay if an officer failed to work the day before and/or after the holiday," and (2) [s]ubsequent to December 2, 2014, the amount of holiday pay paid has been dependent upon whether the officer worked the days before and after the holiday."

¶ 26    On February 20, 2018, in a written award, the arbitrator found that the Village violated the CBA by not withholding pension contributions from its police patrol officers' holiday pay and he concluded that the proper remedy was for the Village to retroactively withhold pension contributions from holiday pay. Within the award, the arbitrator stated that he lacked the authority to determine whether holiday pay under the CBA is pensionable under Illinois law. The Village did not thereafter seek to vacate, modify, or correct the arbitration award pursuant to the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2018)).

¶ 27                                E. The Board Hearing

¶ 28    On March 26, 2019, the Board conducted a hearing with respect to the treatment of holiday pay as pensionable salary under the CBA. The hearing was the result of a joint request by the Village and MAP following the Board's receipt of near-identical letters from several retired members of the Village's police department, including the retired officers, requesting to have their "pension payments *** adjusted to reflect the [arbitration] award along with all retroactive pay being calculated and paid without delay." One letter was read into the record during public comment, but there was no further discussion of these individual retirees or their statuses in the Pension Fund. Prior to the hearing, the Board trustees were provided with a joint exhibit package prepared by the Village and MAP, which was entered into the record.

¶ 29    At the hearing, the Village urged the Board to conclude that holiday pay is not pensionable, because holiday pay is not "fixed," as that term is defined under the pertinent section of the Administrative Code. The Village argued that a police patrol officer's receipt of holiday pay is wholly dependent on the officer meeting the eligibility requirements outlined in section 6.3. It acknowledged that, between 2007 and 2014, it did not enforce the portion of section 6.3 that precludes an officer from holiday pay eligibility if the officer did not "work his/her last full

scheduled working day preceding and the first full scheduled working day immediately following the day observed as a holiday unless the employee's total absence from work is excused by his/her Department Head and is chargeable to an authorized paid leave," but it stressed that it had rigorously enforced it since December 2014. In support, it highlighted multiple instances when certain officers did not receive pay for particular holidays because they were ineligible under section 6.3. The Village also argued that the period of nonenforcement of section 6.3 did not render holiday pay under the CBA pensionable, and it noted that MAP had no argument as to why, after 2014, holiday pay should be deemed pensionable.

¶ 30    At the hearing, the Village relied heavily on the Pension Division's advisory opinion wherein it reviewed the CBA and concluded that section 6.3 disqualified holiday pay from being considered part of salary for pension purposes. The Village stressed that the Board had to give considerable deference to the Pension Division's opinion, and it also pointed to similar opinions the Pension Division issued to other cities within Illinois that involved similar contractual provisions.

¶ 31    The Village also argued that, during negotiations prior to the ratification of the CBA, it relied on section 6.3 for its position that holiday pay is not pensionable and it communicated that position to MAP. Similarly, it stressed that MAP, during negotiations, abandoned its proposal to eliminate section 6.3 from the CBA and that MAP understood that the Village did not believe that holiday pay was pensionable.

¶ 32    The Village stressed that, for at least the prior 10 years, even the Board had maintained that holiday pay is not pensionable. It noted that the Board entered into its meeting minutes both its disagreement with the 2010 audit findings and the memo drafted by Sullivan summarizing his September 2013 conversation with Brandt, who informed Sullivan that, in his view, the audit was

flawed because the examiner failed to consider section 6.3 and, if he had, "the fund would never have been found non-compliant for holiday pay."

¶ 33    As a final matter, the Village asserted that the Board lacked jurisdiction to reconsider its prior decisions concerning holiday pay, because the 35-day period for challenging those decisions under the Administrative Review Law had lapsed.

¶ 34    MAP also offered oral argument at the hearing. Specifically, it asserted that the intent of the parties' agreement to revise section 6.2, as memorialized in the tentative agreement, "obviously, was to make the officers' nine holidays that they get *** part of the pension." It argued that said goal "had to be done in two steps," the first of which was for the Village to deduct pension contributions from holiday pay.[3]

¶ 35    MAP agreed that, under *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546 (2009), the Board was required to give substantial weight to the Pension Division's advisory opinion unless its interpretation of the Pension Code was arbitrary, capricious, or manifestly contrary to the statute. However, MAP argued that the Pension Division's interpretation *was* arbitrary, capricious, or manifestly contrary to the Pension Code because, in MAP's view, the opinion was premised on less than "full disclosure and complete evidence." Specifically, MAP

---

[3] MAP did not specify during argument before the Board what the second step was. We note that, on administrative review, counsel explained the tentative agreement as follows:

"I was not successful [during negotiations leading to the CBA] in getting to what I refer to as 'step two.' I wanted to get 6.3 out. But I felt *** if I could get *** 6.2 changed, I would still have hope of maybe going before the *** Board and getting [the Board] to determine whether or not this was pensionable salary."

stressed that, when the Village requested an advisory opinion from the Pension Division in December 2014, it failed to disclose that it did not enforce, "[f]rom 2007 through December 2, 2014, the portion of [s]ection 6.3 referencing work on the day before and the day after a holiday[,] *** and no deductions were made from holiday pay if an officer failed to work the day before and/or after the holiday," as the parties later stipulated at arbitration. MAP stressed that the Board was similarly unaware of this fact when it concluded in 2010 that holiday pay was not pensionable.

¶ 36    In disputing the Pension Division's conclusion in its advisory opinion that holiday pay under the CBA is not "salary" for pension calculation purposes because section 6.3 does not meet the definition of "fixed" under the Administrative Code, MAP argued, "[s]ure it's fixed. All you've got to do is look at section 6.2 and it will tell you that. And then look at the salary appendix of the agreement—it will tell you the hourly rate of the officer. You can figure it out. It isn't rocket science." MAP acknowledged that multiple police patrol officers did not receive holiday pay in 2015, 2016, 2017, and 2018, because they did not meet the eligibility requirements in section 6.3, but it argued that the other officers should not be "punished" because some officers "didn't live up to the contract."

¶ 37    Further, MAP argued that it is not difficult, administratively, to calculate the amount of holiday pay for each officer—even "if an officer screws up and under 6.3 [is ineligible for holiday pay due to an unexcused absence]." MAP suggested that, if an officer is ineligible for holiday pay for a particular holiday, "[y]ou back that out. *** [It is] [e]asily ascertainable. You don't have to be a CPA."

¶ 38                    F. The Board's Decision—Holiday Pay is Pensionable

¶ 39    After deliberating in a closed executive session, by a vote of 4 to 1, the Board concluded that "holiday pay under the specific Collective Bargaining Agreement Dated May 1, 2013[,] to

April 30, 2016[,] at issue is pensionable." The Board issued its written decision on October 10, 2019, and it explicitly incorporated the joint exhibits and a transcript of the hearing, which it stated were "part and parcel" of its written decision.

¶ 40 In support of its decision, the Board stated that it "accept[ed] the arguments of MAP that the holiday pay component can be ascertained and treated as fixed and regular in light of the specific facts and circumstances presented here." Similarly, pointing to the definitions found in section 4402.30 of Title 50 of the Administrative Code, the Board stated that, "under the specific CBA at issue here, all elements have been established as to 'Class,' 'Fixed,' 'Rank,' 'Regular,' and 'Salary.' " The Board specifically "took note of the prior practices of the Village" concerning its nonenforcement of section 6.3 and concluded that "this holiday pay component was part of an established police officer salary making it pensionable and thus requiring the Village to withhold the necessary [pension] contribution."

¶ 41 The Board was also persuaded by the fact that, during contract negotiations preceding the ratification of the CBA, the parties agreed to strike from section 6.2 the phrase "[h]owever, police pension deductions shall not be withheld," such that the Village was no longer contractually prohibited from withholding pension contributions from its officers' holiday pay. In the Board's view, the removal of this language "reflected a bargained-for (or *quid pro quo*) term of the final agreement between the Village and MAP," and it represented "an enhancement to MAP's members." Moreover, the Board "found significant and definitive" the conclusion of the arbitrator that "the Village violated the *** [CBA] *** when it did not withhold the 9.91% pension contribution from its Police Patrol Officers' holiday pay," and it noted that the Village did not challenge the arbitration award.

¶ 42    In discounting the Pension Division's advisory opinion, the Board found that "[t]he information provided to [the Pension Division] on the matters at issue was not complete[,] as explained by MAP." The Board did not specify what information it believed the Pension Division was lacking when it issued the advisory opinion, but we presume that it was referring to the period of nonenforcement of the portion of section 6.3 that would have made officers who failed to work their last full scheduled working day before and after the observed holiday ineligible for holiday pay unless the absence was excused. As noted, every officer under the CBA received full holiday pay, regardless of whether they were eligible under section 6.3, as a result of this period of nonenforcement. The Board's written order concluded by stating that "this determination will stand as its final order on this matter."

¶ 43                              G. Administrative Review

¶ 44    On November 7, 2019, the Village filed a timely petition for administrative review, challenging the Board's determination that "holiday pay under the specific Collective Bargaining Agreement Dated May 1, 2013[,] to April 30, 2016[,] at issue is pensionable." After briefing and a hearing on June 11, 2020, the circuit court confirmed the Board's decision. In announcing its ruling from the bench, the circuit court acknowledged that "Department of Insurance rulings should be given great weight," but it noted that the instant controversy spawned several opinions from the Pension Division, namely: the 2010 audit, Brandt's opinion following the audit as communicated to Sullivan, and the advisory opinion. The court stated that it would give the most weight to the 2010 audit because it was "issued after a full and complete audit." In addressing the applicable language in the CBA, the court stated as follows:

        "When [sections] 6.2 and 6.3 are read together, there is—it's not entirely clear.

    However, the holiday pay at their straight hourly rate is very clearly still in section 6.2 and

it still says, 'appropriate deductions shall be withheld.' I don't believe that the language of [section] 6.3 renders that holiday pay to be—I'm searching for the right word—incapable of being a regular workday. I'm still not finding the right word. But I believe that the decision of the arbitrator did not rule on whether that holiday pay was pensionable. So, I think that the Court has to refer back to the Department of Insurance audit report and opinion which declares that holiday pay is pensionable. I think that the 35-day requirement, it was not triggered until the appropriate time to bring—which was followed to bring this before the Board."

¶ 45    The Village timely filed a notice of appeal.

¶ 46                              II. ANALYSIS

¶ 47                              A. Jurisdiction

¶ 48    As a threshold matter, we must address the Village's argument that the Board and, by extension, this court lack jurisdiction to consider the instant controversy, because the 35-day deadline for commencing an action to review a final administrative decision under the Administrative Review Law has passed. See 735 ILCS 5/3-103 (West 2018); *Bell v. Retirement Board of Firemen's Annuity & Benefit Fund*, 398 Ill. App. 3d 758, 762-63 (2010). This argument appears to be two-fold. First, the Village asserts that the Board lacks jurisdiction to revisit the pension awards of the "individual defendants and other retirees," because they did not file an action for administrative review within 35 days of the Board's initial determination of their pension benefits. Second, pointing to the Board's "formal action" on October 15, 2013, wherein it admitted into its minutes Sullivan's memorandum that concluded that holiday pay under the CBA "was not pensionable," the Village argues that the Board lacks "the jurisdictional ability to flip-flop on its determination that holiday pay is not pensionable." This jurisdictional question presents a question

of law, and, as such, *de novo* review is appropriate. See *Jelinek v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 392 Ill. App. 3d 372, 376 (2009).

¶ 49    Section 3-148 of the Pension Code (40 ILCS 5/3-148 (West 2018)), which applies to the Board, provides that the Administrative Review Law governs the review of final pension board decisions. See *Sola v. Roselle Police Pension Board*, 342 Ill. App. 3d 227, 230 (2003). "Because the Pension Code provides that decisions of pension boards are subject to the Administrative Review Law, the Board's decision can be reviewed only pursuant to that law." *Id.* (citing *Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769, 773-74 (1989)). Section 3-103 of the Administrative Review Law (735 ILCS 5/3-103 (West 2018)), which the Village relies on exclusively in its jurisdictional argument, provides that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." This 35-day limit is jurisdictional, and, as such, pension boards lack the authority to reconsider final decisions beyond the expiration of the 35-day period. *Sola*, 342 Ill. App. 3d at 230.

¶ 50    The term "administrative decision" or "decision" is defined in the Administrative Review Law as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties[,] or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2018). However, these terms do not

> "include rules, regulations, standards, or statements of policy of general application issued by an administrative agency to implement, interpret, or make specific the legislation enforced or administered by it unless such a rule, regulation, standard or statement of policy

is involved in a proceeding before the agency and its applicability or validity is in issue in such a proceeding." *Id.*

¶ 51    At the outset, we note that the Village fails to identify anything in the record that demonstrates precisely when the Board issued its final administrative decisions concerning the pension applications of any individual defendant, namely, the retired officers. No formal written decision memorializing the pension benefits for any of the retired officers appears in the record. While we may deduce that the pension benefits awarded to the retired officers constitute final administrative decisions by the Board (see *Ray v. Beussink & Hickam, P.C.*, 2018 IL App (5th) 170274, ¶ 24), we simply have no idea *when* those benefits were awarded for purposes of calculating the 35-day jurisdictional limit. The dates upon which the Board presumably awarded pension benefits to the retired officers were not identified by any party during the hearing before the Board or during oral argument before the circuit court on administrative review, and this information is similarly absent from the Board's written final decision and the Village's petition for administrative review. Because defendants have not argued otherwise, however, we assume for the sake of argument that the 35-day deadline has passed for all five of the retired officers. Our analysis of the Village's 35-day jurisdictional argument does not end there, however.

¶ 52    As the First District recently stated in *De Jesus v. Policemen's Annuity & Benefit Fund*, 2019 IL App (1st) 190486, ¶¶ 26-27, when pension or disability benefits are at issue, a party who has not initiated timely administrative review may challenge a pension board's action under two limited circumstances: (1) when the party challenging the action was not a party to the underlying administrative review action and the challenge is to a systematic miscalculation, as opposed to an individual miscalculation, or (2) where the party challenging the systematic miscalculation can point to a specific rule, regulation, standard, or statement of policy from the pension board itself.

¶ 53    This case falls squarely within the second circumstance outlined in *De Jesus*. Put simply, the instant controversy does not concern an individualized miscalculation, and the Village all but concedes this point in arguing that the Board lacked jurisdiction to reevaluate "the annuity benefits of the *individual defendants and other retirees*." (Emphasis added.) The fact that the retired officers were not the focus of the Board's hearing is also highlighted by the Village's appellate brief. Specifically, the Village stressed that, during the hearing before the Board, "there was no discussion whatsoever about these individuals or their status in the [Pension] Fund" beyond the reading into the record of a letter drafted by a retired officer asking the Board to adjust their pension benefits.

¶ 54    Instead, the matter before the Board represented a challenge by multiple officers, as well as MAP (ostensibly on behalf of all of its member police officers), to convince the Board to, in the Village's words, "reverse its longstanding determination about the pensionablity of holiday pay." Under *De Jesus*, the Board's systematic refusal to include holiday pay in its calculation of pensionable salary based on its interpretation of the CBA represents "a specific rule, regulation, standard, or statement of policy from the pension board itself." The Village appears to concede this point, too, because its argument that the Board took "formal action" on October 15, 2013, to memorialize its interpretation of the CBA relative to holiday pay, if accepted, readily describes "a specific rule, regulation, standard, or statement of policy from the pension board itself." See *De Jesus*, 2019 IL App (1st) 190486, ¶ 27.

¶ 55    It is well established that "[a] systemic miscalculation falls outside the definition of an 'administrative decision' under the review law. It is not a 'decision, order or determination of any administrative agency rendered in a particular case,' but a 'rule[ ], regulation[ ], standard[ ] or statement[ ] of policy.' " *Board of Education of the City of Chicago v. Board of Trustees of the*

*Public Schools Teachers' Pension & Retirement Fund*, 395 Ill. App. 3d 735, 744 (2009) (quoting 735 ILCS 5/3-101 (West 2006)). Accordingly, the 35-day window for reviewing a final administrative decision under the Administrative Review Law did not impede the jurisdiction of the Board, nor does it impede our jurisdiction on appeal, because the controversy is rooted in a theory of a systematic miscalculation by the Board stemming from a specific rule, regulation, standard, or policy whose applicability or validity was not previously at issue before the Board. We now turn to the merits.

¶ 56                                B. Our Resolution

¶ 57    We begin by addressing the appropriate standard of review for the underlying controversy. Section 3-148 of the Pension Code makes clear that judicial review of a decision by a police pension board is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)). Our role in an administrative review case is to review the decision of the administrative agency—not the determination of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). The applicable standard of review depends on whether the question presented is one of law, one of fact, or a mixed question of law and fact. *Id.* at 532. Rulings on questions of fact will be reversed only if they are against the manifest weight of the evidence, questions of law are reviewed *de novo*, and mixed questions of law and fact are reviewed under the "clearly erroneous" standard. *Id.* Regardless of the standard of review, a plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden. *Id.* at 532-33.

¶ 58    Notwithstanding the Village's reliance on the deference that is afforded to advisory opinions issued by the Pension Division, the parties appear to agree that this issue involves a mixed question of law and fact such that the Board's decision is subject to the "clearly erroneous"

standard. As our supreme court has observed, this standard is "between a manifest weight of the evidence standard and a *de novo* standard so as to provide some deference to the [agency's] experience and expertise." *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). A decision is clearly erroneous "where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Although the "clearly erroneous" standard is deferential, we will not "blindly defer" to the Board's decision. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395.

¶ 59 The crux of the issue on appeal is whether holiday pay under article 6 of the CBA is "fixed" compensation. This threshold question is paramount because, as explained below, the applicable statutory and regulatory authority make clear that if police officer compensation is not "fixed," it is not "salary" for pension purposes.

¶ 60 As noted, the Board determined in its written decision that "holiday pay under the [CBA] at issue is pensionable," in part, because it found that "the holiday pay component [of the CBA] can be ascertained and treated as fixed and regular in light of the specific facts and circumstances presented." This vague "finding of fact" lacks factual and legal support in the administrative record. As such, we agree with the Village that the Board's written decision was clearly erroneous such that reversal is appropriate. In reaching this conclusion, we are guided by the straightforward application of the underlying facts (which are largely uncontested) to the pertinent statutory framework provided by the Pension Code as expounded in the Administrative Code.

¶ 61 Section 3-125.1 of the Pension Code governs pension contributions by police officers. It requires each police officer to "contribute to the pension fund the following percentages of salary

for the periods stated: *** beginning January 1, 2001, 9.91%. Such sums shall be paid or deducted monthly." 40 ILCS 5/3-125.1 (West 2018). This section goes on to define salary as

> "the annual salary, including longevity, attached to the police officer's rank, as established by the municipality's appropriation ordinance, including any compensation for overtime which is included in the salary so established, but excluding any 'overtime pay', 'holiday pay', 'bonus pay,' 'merit pay', or any other cash benefit not included in the salary so established." *Id.*

¶ 62    Pursuant to the authority granted in section 1A-103 of the Pension Code (40 ILCS 5/1A-103 (West 2018)), the Department has promulgated rules for the administration and enforcement of the Pension Code (50 Ill. Adm. Code 4402.10 (eff. Aug. 7, 1998)). As part of its rulemaking authority, the Department has promulgated part 4402 of Title 50 of the Illinois Administrative Code "to define the word 'salary' as used in Section 3-125 *** of the *** Pension Code as it applies to pension funds formed pursuant to Article[ ] 3 *** of the *** Pension Code." 50 Ill. Adm. Code 4402.20 (eff. Aug. 7, 1998).

¶ 63    Pertinently, the Administrative Code defines salary for pension purposes as

> "any *fixed* compensation received by an employee of a municipality that participates in one of the pension funds established under Article 3 *** of the Illinois Pension Code, which has been approved through an appropriations ordinance of the municipality. Salary is received regularly and is attached to the rank or class to which the *** police officer is assigned." (Emphasis added.) 50 Ill. Adm. Code 4402.30 (eff. Apr. 9, 1996).

In turn, this section of the Administrative Code defines "fixed" as

"payment in a *predetermined amount* which can be determined through an examination of the appropriation ordinance, plans or agreements establishing salary." (Emphasis added.) *Id.*

The appellate court has similarly held that compensation must be "fixed" to constitute salary for pension purposes. See *Holland v. City of Chicago*, 289 Ill. App. 3d 682, 689 (1997) (holding that fringe benefits, such as holiday pay and health insurance, are not "fixed" and, thus, are not "salary" under article 5 of the Pension Code, which governs police pension funds in cities of more than 500,000 inhabitants); *Jahn v. City of Woodstock*, 99 Ill. App. 3d 206, 209 (1981) (noting that "salary" as used in article 3 of the Pension Code generally means a fixed annual or periodic payment and does not include fringe benefits).

¶ 64     Here, holiday pay under article 6 of the CBA plainly is not "fixed," because it is not "in a predetermined amount which can be determined through an examination of the appropriation ordinance, plans or agreements establishing salary." Section 6.3 establishes the eligibility requirements that a police patrol officer must meet to receive holiday pay for any of the nine enumerated holidays listed in section 6.1. Again, section 6.3 states:

"In order to be eligible for holiday pay, a police patrol officer must work his/her last full scheduled working day preceding and the first full scheduled working day immediately following the day observed as a holiday unless the employee's total absence from work is excused by his/her Department Head and is chargeable to an authorized paid leave. Authorized paid leave shall include vacation, personal day, compensatory time, employment disability leave of less than six months, or approved sick leave. Employees who are off work due to illness, but have insufficient sick time to cover the illness, who are suspended, who are on an off-duty disability or employment disability in excess of six

months, who are on pension, or any other inactive payroll status shall not be eligible for holiday pay."

Under a plain and ordinary reading of this section, unless the absence is excused and is chargeable to an authorized paid leave, a police patrol officer is ineligible for holiday pay for a holiday if he or she fails to work both (1) their last full scheduled workday before the observed holiday and (2) their first full scheduled workday after the observed holiday. Moreover, police patrol officers who are suspended, on a disability in excess of six months, or on a pension or other inactive payroll status are ineligible to receive holiday pay.

¶ 65    The undisputed evidence presented to the Board established that, between 2015 and 2018, approximately 12 police patrol officers did not receive holiday pay for certain holidays because they were ineligible under section 6.3, in that the officers had an unexcused work absence on the last full scheduled workday before and/or the first full scheduled workday after the observed holiday. For example, the record demonstrates that five officers were ineligible for—and thus did not receive—holiday pay for certain holidays in 2018, which represents more than 10% of the officers covered by the CBA. Specifically, two officers did not receive holiday pay for President's Day, and three officers did not receive holiday pay for other holidays, namely: New Year's Day, Memorial Day, and Independence Day. These instances, where officers did not receive holiday pay because they were ineligible under section 6.3 due to an unexcused work absence, conclusively establish that this form of compensation is not "fixed," because it is not "payment in a predetermined amount." Rather, the amount of holiday pay that an officer may receive under the CBA varies based on the officer's attendance record, among other factors. Of note, MAP stipulated during arbitration that, "[s]ubsequent to December 2, 2014, the amount of holiday pay paid has been dependent upon whether the officer worked the days before and after the holiday" and that

an officer had recently received reduced holiday pay due to "an unpaid suspension [that was served] on one holiday."

¶ 66   During the hearing before the Board, MAP offered scant argument that holiday pay under the CBA is "fixed." Counsel stated, "[s]ure it's fixed. All you've got to do is look at section 6.2 and it will tell you that. And then look at the salary appendix of the agreement—it will tell you the hourly rate of the officer. You can figure it out. It isn't rocket science." This argument fails, however, because it entirely disregards section 6.3 and the effect its operation has had on the amount of holiday pay received by the patrol officers, as outlined above.

¶ 67   We also note that, during oral argument before the Board, counsel for MAP offered a line of argument that, in fact, supports the conclusion that holiday pay under the CBA is not "fixed." Specifically, when counsel acknowledged that multiple officers did not receive holiday pay between 2015 and 2018 because they were ineligible under section 6.3, rather than argue that holiday pay is "fixed," counsel argued that the other officers should not be "punished." Counsel asked, rhetorically,

> "What about the other *** officers that were here? They got their holiday pay. Shouldn't they be entitled to *** have that count as [pensionable salary?] *** Are we going to punish—because of one person [having an unexcused work absence]—are we going to turn around and punish [the other officers]? That doesn't make [holiday pay] conditional. *** [All the officers] shouldn't be punished because [some] didn't live up to the contract."

Defendants compound this error on appeal. For example, in their appellate brief, they state that "[n]owhere in 6.3 is there a requirement that all 47 members of [MAP] had to meet the requirements in order to receive holiday pay. In other words, what if only one person called in sick during the calendar year[?] [D]oes that mean that the other 46 [MAP] members, who did not call

in sick, should not receive their holiday pay added onto their base salary at the time of retirement or disability?"

¶ 68    Counsel also argued before the Board that the amount of holiday pay for each patrol officer can be easily determined, and he asked, rhetorically, "how hard is it, administratively, to figure out what the benefit is, *** to determine who gets *** holiday pay and not?" Counsel continued, "if an officer screws up, and under 6.3 doesn't work it, [it is] real[ly] simple: You back that out." Counsel hypothesized, "[m]aybe he gets eight paid holidays. Easily ascertainable. You don't have to be a CPA."

¶ 69    These arguments and hypothetical examples have the practical effect of affirmatively demonstrating that holiday pay under the CBA is not fixed. Notwithstanding counsel's arguments regarding "punishment" and the ease with which holiday pay can be determined for individual patrol officers, these arguments show that holiday pay is not fixed, because it is not in a "predetermined amount which can be determined through an examination of the appropriation ordinance, plans, or agreements establishing salary." 50 Ill. Adm. Code 4402.30 (eff. Apr. 9, 1996). Defendants note in their brief that, if 1 member of the 47-person bargaining unit does not receive holiday pay because they are ineligible, the remaining 46 officers, who are eligible, would receive holiday pay. This example establishes that such pay is neither fixed nor predetermined. Moreover, counsel's argument that the amount of an individual officer's holiday pay can be easily *determined* by reviewing the officer's work attendance history and other personnel records reinforces the conclusion that such pay is not in a *predetermined* amount. There is no basis to treat variable holiday pay as pensionable salary where, as is the case here, the parties agree that officers were ineligible for such remuneration based on their work attendance and the straightforward application of the CBA.

¶ 70     On appeal, defendants similarly offer little argument that holiday pay under the CBA is "fixed." Rather, they repeatedly emphasize that the Board "accepted the arguments of [MAP] as to how the holiday pay component could be ascertained and treated as fixed and regular in light of the specific facts and circumstances presented." This observation offers nothing in the way of an affirmative argument that holiday pay is fixed—especially when one considers MAP's unrobust argument on this point before the Board.

¶ 71     Like the Board in its written decision, defendants improperly sidestep the threshold question of whether holiday pay under the CBA is "fixed" by pointing to the Village's seven-year period of nonenforcement, from 2007 to 2014, pertaining to "the portion of Section 6.3 referencing work on the day before and the day after a holiday."[4] Specifically, defendants assert that the parties "have a binding past practice of not enforcing section 6.3" such that this section "is a nullity and not dispositive of this issue." We note, however, that although MAP stressed the period of nonenforcement during the hearing before the Board, the argument that section 6.3 is a "nullity" appears to be a new argument on appeal. In any event, the argument fails for several reasons.

¶ 72     First, the "nullity" argument appears at odds with other segments of defendants' brief. Specifically, after stressing the nonenforcement period, defendants clarify that they are not

_____

[4] Although we are cognizant that our role is to review the decision of the Board and not that of the circuit court on administrative review (see *Marconi*, 225 Ill. 2d at 531), we observe that the circuit court had similar difficulty in explaining its ruling, because it did not address the threshold issue of whether holiday pay under the CBA is fixed. The circuit court stated, "I don't believe that the language of [section] 6.3 renders that holiday pay to be—I'm searching for the right word—incapable of being a regular workday. I'm still not finding the right word."

"seeking to have this Court declare a 'past practice.' " Rather, "[t]he sole purpose of highlighting this fact is to demonstrate that the [Pension Division] was not made aware of this material fact" when it issued the advisory opinion. Moreover, defendants acknowledge in their brief that, following ratification of the tentative agreement, "[t]he provisions of [section] 6.3 of the CBA remained in effect," and they describe section 6.3 as governing the requirements "in order to be eligible for holiday pay." Their "nullity" argument is also inconsistent with their acknowledgment that the Village has routinely enforced section 6.3 since December 2014 such that police patrol officers did not receive holiday pay for particular holidays in 2015, 2016, 2017, and 2018 because they did not meet the eligibility requirements in section 6.3, and there is no evidence that MAP or any officer has grieved or otherwise complained about this enforcement. Second, defendants fail to cite any pertinent authority to support their assertion that section 6.3 is a nullity based upon the Village, in defendants' words, "waiving section 6.3 of the CBA" in prior years. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Third, as stressed by the Village, defendants' past practice argument conflicts with express language in the CBA. Specifically, article 25 is titled "Entire Agreement," and it provides, pertinently, that "[t]his Agreement, upon ratification, supersedes all prior practices and agreements, whether written or oral, *** and constitutes the complete and entire agreement between the parties." There is no basis to interpret the CBA as if section 6.3 is not included in it, as defendants appear to advocate, notwithstanding the Village's nonenforcement of this provision in years past.

¶ 73    The conclusion that holiday pay under the CBA is not pensionable because it is not fixed is further supported by the Pension Division's advisory opinion. Under the Pension Code, the Pension Division is authorized to "render advisory services to the pension funds on all matters pertaining to their operations and shall recommend any corrective or clarifying legislation that it

may deem necessary." 40 ILCS 5/1A-106 (West 2018). "Where *** the legislature expressly or implicitly delegates to an agency the authority to clarify and define a specific statutory provision, administrative interpretations of such statutory provisions should be given substantial weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Roselle*, 232 Ill. 2d at 559.

¶ 74    At the request of the Village, the Pension Division interpreted the CBA and concluded that "[s]ection 6.3 *** disqualifies the holiday pay granted under [s]ection 6.2 *** from being considered part of salary for pension purposes for the Hanover Park police officers. Section 6.3 does not meet the definition of '[f]ixed' " under the Administrative Code because it "is not a predetermined amount which can be determined through an examination of the appropriation ordinance, plans or agreements establishing salary," such that "holiday pay [under the CBA] is not to be considered salary for pension purposes."

¶ 75    Defendants make no argument in their brief that the Pension Division's advisory opinion is either arbitrary, capricious, or manifestly contrary to the statute. Instead, they assert that the opinion was flawed because the Pension Division was unaware that a portion of section 6.3 was not enforced from 2007 to 2014. This argument, too, fails because it is dependent on defendants' unsupported assertion that the parties had a "binding past practice of not enforcing [s]ection 6.3 of the CBA," which is expressly refuted by article 25 of the CBA, which makes clear that the CBA is the "[e]ntire [a]greement" between the parties and "supersedes all prior practices and agreements."

¶ 76    Defendants assert that, rather than deferring to the Pension Division's advisory opinion—prepared in January 2015—the outcome here should align with the findings included in the Pension Division's audit report—prepared in February 2010— wherein it concluded that holiday pay under

the CBA is salary under section 4402.30 of the Administrative Code. This argument misses the mark. As stressed by the Village, while the audit report quoted section 6.2 of the CBA at length, the report bears no indication that the Pension Division considered, or was even aware of, section 6.3. Indeed, the Pension Division appeared to acknowledge this oversight when Brandt communicated to Sullivan that, in his view, the examiner in 2009-10 did not completely consider section 6.3 and that the Pension Fund would have not been found noncompliant regarding holiday pay if section 6.3 had been considered. The Pension Division's advisory opinion, in essence, memorialized Brandt's earlier statements to Sullivan and confirmed the view of the Pension Division that holiday pay under the CBA is not pensionable. Put simply, there is no reasonable basis to defer to the audit findings regarding holiday pay when those same findings were subsequently rejected by the Penson Division, twice. In any event, there is no indication that the Board was influenced by the audit because, apart from including it in the list of documents contained in the joint exhibit package prepared by the parties, the Board neither mentioned nor made findings pertaining to the audit in its written decision.

¶ 77    Because we conclude that holiday pay under the CBA is not "fixed" and thus is not pensionable salary, we need not evaluate the Board's additional findings that such holiday pay meets "all elements *** as to 'Class,' *** 'Rank,' and 'Regular' " under section 4402.30 of Title 50 of the Administrative Code.

¶ 78                                III. CONCLUSION

¶ 79    For the reasons stated, the Board's determination that "holiday pay under the specific Collective Bargaining Agreement Dated May 1, 2013[,] to April 30, 2016[,] at issue is pensionable" was clearly erroneous. Accordingly, we reverse the judgment of the circuit court of Du Page County affirming the Board's decision.

¶ 80    Circuit court judgment reversed.

¶ 81    Board decision reversed.

**No. 2-20-0380**

| | |
|---|---|
| **Cite as:** | *Village of Hanover Park v. Board of Trustees of the Village of Hanover Park Police Pension Fund*, 2021 IL App (2d) 200380 |
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 19-MR-1250; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| **Attorneys for Appellant:** | Robert J. Smith Jr. and Paul Denham, of Clark Baird Smith LLP, of Rosemont, for appellant. |
| **Attorneys for Appellee:** | Robert M. Zelek, of Park Ridge, for appellee Board of Trustees of the Village of Hanover Park Police Pension Fund.<br><br>Richard J. Reimer, of Reimer Dobrovolny & Labardi PC, of Hinsdale, for other appellees. |