Docket No. 85005–Agenda 13–November 1998.

AIR SAFETY, INC., a/k/a Air Safety Engineering, Appellant, v. 

 TEACHERS REALTY CORPORATION, Appellee.

Opinion filed January 22, 1999.

JUSTICE HEIPLE delivered the opinion of the court:

May extrinsic evidence be provisionally admitted to show that an explicitly integrated, facially clear, and complete written contract is actually ambiguous? In this action for declaratory relief, the circuit court of Cook County and the appellate court (No. 1–96–3615 (unpublished order under Supreme Court Rule 23)) answered no. We agree, and therefore affirm.

FACTS

On February 1, 1990, the plaintiff, Air Safety Engineering (Air Safety), entered into a contract with the defendant, Teachers Realty Corporation (Teachers). This contract provides that Air Safety would perform numerous specified asbestos abatement projects on a high-rise office building owned by Teachers at 230 West Monroe Street, Chicago, Illinois. Allowing for changes to be made to the original agreement, section 12.1.2 of the contract provides:

“The Owner, without invalidating the Contract, may order changes in any Unit of Work within the general scope of the Contract consisting of additions, deletions or other revisions, and the Contract Sum and the Contract time applicable thereto shall be adjusted accordingly. All such changes in Work shall be authorized by change order, and shall be performed under the applicable conditions of the Contract Documents.”

Additionally, section 14.7 of the contract states that the “Contract represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral.”

In 1991, during Air Safety’s performance of the contract, Teachers, through its agent Miglin-Beitler, solicited bids for 16 additional asbestos abatement projects at the 230 West Monroe location. This solicitation for bids requested that contractors submit two prices for each project–one price for the cost of performing an individual project without award of all 16 projects, and another price reflecting a discounted amount for each project if the contractor were awarded all of the projects.

Three contractors, including Air Safety, submitted bids. Eventually, Teachers’ engineer, Environmental Science Engineering, recommended that Air Safety perform all of the projects listed in the 1991 bid solicitation. However, no written contract was ever executed between Teachers and Air Safety respecting an award of all the new projects to Air Safety. Rather, three change orders to the 1990 contract were executed which authorized Air Safety to perform only some of the projects. Each of the three change orders, orders 50, 51, and 53, states that it is a change order to the 1990 contract and includes: (1) a description of the work; (2) the original cost of the 1990 contract; (3) the contract sum prior to the change order; (4) the increase in cost due to the change order; (5) and the new contract cost. Additionally, each change order references a letter from Miglin-Beitler which gives a fixed price for each project and authorizes Air Safety to begin work. The fixed prices listed in the Miglin-Beitler letters and the change orders are the prorated bid amounts Air Safety submitted pursuant to the 1991 bid solicitation if it were awarded all sixteen projects.

Air Safety, however, was never authorized to perform work on any other projects not authorized by the three change orders. Rather, these projects were awarded and ultimately completed by other contractors. Consequently, Air Safety filed this action for declaratory relief in the circuit court of Cook County seeking a declaration that: (1) the 1991 bid solicitation ripened into a contract between Air Safety and Teachers for all 16 projects; and (2) Air Safety was entitled to the nonprorated amounts for each project listed in its original bid since it was not ultimately given all of the projects. In support of its claim, Air Safety argued that the prorated amounts for the projects listed in the change orders evidenced the fact that it had been awarded all 16 projects. Additionally, Air Safety submitted other evidence which it claimed showed that an oral contract had been entered into concerning all of the projects contained in the 1991 bid solicitation.

Teachers filed a motion for partial summary judgment, arguing that the merger doctrine and the parol evidence rule precluded the finding of a second contract. Specifically, Teachers posited that because the change orders were executed pursuant to the 1990 contract, the evidence presented by Air Safety merged into the 1990 contract via the 1990 contract’s integration clause contained in section 14.7. Moreover, Teachers argued that because the change orders are facially clear and unambiguous changes to the 1990 contract, the extrinsic evidence presented by Air Safety is inadmissible to contradict or vary the terms of the change orders.

The circuit court agreed and found that: (1) the change orders at issue were executed pursuant to the 1990 contract; (2) the change orders are clear, complete, and unambiguous; (3) the court would not consider evidence that predated the orders to materially alter or contradict the express terms of the orders; (4) the parties are bound by the prices listed in the change orders; and (5) there is no contract for additional projects at 230 West Monroe. The appellate court affirmed.

ANALYSIS

Traditional contract interpretation principles in Illinois require that:

“[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.” 
Western Illinois Oil Co. v. Thompson
, 26 Ill. 2d 287, 291 (1962).

This approach is sometimes referred to as the “four corners” rule. See, 
e.g
., 
URS Corp. v. Ash
, 101 Ill. App. 3d 229, 234 (1981).

In applying this rule, a court initially looks to the language of a contract alone. See 
Rakowski v. Lucente
, 104 Ill. 2d 317, 323 (1984) (stating that both the meaning of a written agreement and the intent of the parties is to be gathered from the face of the document without assistance from extrinsic evidence). If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence. 
Farm Credit Bank v. Whitlock
, 144 Ill. 2d 440, 447 (1991). If, however, the trial court finds that the language of the contract is susceptible to more than one meaning, then an ambiguity is present. 
Whitlock
, 144 Ill. 2d at 447. Only then may parol evidence be admitted to aid the trier of fact in resolving the ambiguity. 
Whitlock
, 144 Ill. 2d at 447.

In the present case, the trial court applied the four corners rule and concluded that the change orders were facially clear, complete, and unambiguous documents executed pursuant to the 1990 contract. Thus, the trial court refused to look beyond the contract for some hidden ambiguity. Air Safety does not directly challenge the trial court’s finding that the change orders were 
facially 
unambiguous. Rather, Air Safety argues that this court should abandon the four corners rule and instead adopt the “provisional admission” approach to contract interpretation (sometimes also referred to as the “extrinsic ambiguity” approach).

Under the provisional admission approach, although the language of a contract is facially unambiguous, a party may still proffer parol evidence to the trial judge for the purpose of showing that an ambiguity exists which can be found only by looking beyond the clear language of the contract. See 
Ahsan v. Eagle, Inc.
, 287 Ill. App. 3d 788, 790 (1997). Under this method, an extrinsic ambiguity exists “when someone who knows the context of the contract would know if the contract actually means something other than what it seems to mean.” 
Ahsan
, 287 Ill. App. 3d at 790. Consequently, if after “provisionally” reviewing the parol evidence, the trial judge finds that an “extrinsic ambiguity” is present, then the parol evidence is admitted to aid the trier of fact in resolving the ambiguity. 
Ahsan
, 287 Ill. App. 3d at 791.

This provisional admission approach has been applied by the Illinois appellate court in a variety of cases. See, 
e.g
., 
Ahsan
, 287 Ill. App. 3d at 790; 
Meyer v. Marilyn Miglin, Inc.
, 273 Ill. App. 3d 882, 889 (1995); 
USG Corp. v. Sterling Plumbing Group, Inc.
, 247 Ill. App. 3d 316, 318 (1993); 
Rybicki v. Anethesia & Analgesia Associates, Ltd.
, 246 Ill. App. 3d 290, 298-300 (1993); 
Zale Construction Co. v. Hoffman
, 145 Ill. App. 3d 235, 241-42 (1986); 
URS Corp. v. Ash
, 101 Ill. App. 3d 229, 234-35 (1981); 
Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.
, 49 Ill. App. 3d 258, 263 (1977). This court, however, has never formally adopted the provisional admission approach, and we decline to do so today because the contract in the case before us contains an explicit integration clause.
(footnote: 0)
In 
Armstrong Paint & Varnish Works v. Continental Can Co.
, 301 Ill. 102 (1921), this court stated:

“When parties sign a memorandum expressing all the terms essential to a complete agreement they are to be protected against the doubtful veracity of the interested witnesses and the uncertain memory of disinterested witnesses concerning the terms of their agreement, and the only way in which they can be so protected is by holding each of them conclusively bound by the terms of the agreement as expressed in the writing.” 
Armstrong
, 301 Ill. at 106.

Moreover, where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence.

During contract negotiations, a party may propose terms, conditions, and provisions which are ultimately rejected in order to reach a compromise with the other party. That other party, of course, may do the same. The integration clause makes clear that the negotiations leading to the written contract 
are not
 the agreement. Accordingly, considering extrinsic evidence of prior negotiations to create an “extrinsic ambiguity” where 
both
 parties 
explicitly
 agree that such evidence will 
not 
be considered ignores the express intentions of the parties and renders integration clauses null.

Although Air Safety argues that the four corners rule is flawed because it assumes precision in language that cannot exist and requires the judge to determine the true intent of the parties in a transaction that is removed in time and circumstances, Air Safety 
explicitly contracted
 that its agreement be interpreted subject to these purported flaws. An integration clause such as the one in the present case is a clear indication that the parties desire the contract be interpreted solely according to the language used in the final agreement. Consequently, we will not write the integration clause out of the contract for policy reasons. Air Safety was free to negotiate a contract omitting the integration clause. It did not, and it is bound by its bargain.

The facts in this case cogently illustrate the wisdom of the four corners rule where the parties have agreed that their contract be integrated. Air Safety agreed to the 1990 contract containing the provision which stated that the written agreement superseded “all prior negotiations, representations, or agreements, either written or oral.” Later, it agreed to the change orders 
explicitly executed pursuant to that 1990 contract
. Nowhere do the change orders reference some “other” agreement. Now, however, Air Safety asks this court to: (1) ignore the integration clause by considering prior negotiations and representations, both oral and written; and (2) hold that, despite the unmistakably clear inclusion of the contract date as 1990 on the change orders, the orders are not really part of that 1990 agreement, but constitute some new contract. The question arises, what is the value of a writing when the words therein have lost their meaning? When movie producer Sam Goldwyn was asked the value of an 
oral
 contract, he advised, “An oral contract isn’t worth the paper it’s written on.” If we departed from the four corners rule, the written contract here might be worth little more.

Finally, we hold that Air Safety’s contention that the four corners rule was misapplied in the courts below is without merit. First, Air Safety argues that the merger doctrine and the parol evidence rule should not apply here 
because the change orders were executed in only partial performance of an agreement for all 16 projects
. Second, Air Safety argues that the merger doctrine should not exclude extrinsic evidence because this extrinsic evidence is actually 
part of a second contract for all 16 projects.
 These arguments, of course, assume the existence of an agreement for all 16 projects. Establishing the existence of such an agreement, however, is dependent upon the extrinsic evidence excluded by the four corners rule. Air Safety cannot use the very evidence banned by the four corners rule to show that an exception applies which will allow the use of that evidence. The arguments are clearly circular and without merit.

CONCLUSION

For the reasons stated, we hold that the four corners rule precludes the consideration of extrinsic evidence where a contract contains an integration clause and is facially unambiguous. Thus, Air Safety is bound by the language of the 1990 contract and the change orders executed pursuant to that contract.

The judgments of the appellate and circuit courts are affirmed.

Affirmed
.

FOOTNOTES
0:     1
 We expressly decline to rule on whether the provisional admission approach may be applied to interpret a contract which does not contain an integration clause until such a case is squarely before the court.