# United States Court of Appeals for the Federal Circuit

04-1397

MARK THATCHER and DECKERS OUTDOOR CORPORATION
(Successor in Interest to Mark Thatcher),

Plaintiffs-Appellants,

v.

KOHL'S DEPARTMENT STORES, INC. and KOHL'S CORPORATION,

Defendants-Appellees,

and

ASSOCIATED FOOTWEAR, INC.,

Defendant.


Thomas D. Rosenwein, Gordon, Glickman, Flesch & Rosenwein, of Chicago, Illinois, argued for plaintiffs-appellants. Of counsel on the brief were Paul G. Juettner and Laura R. Wanek, Greer, Burns & Crain, Ltd., of Chicago, Illinois.

John T. Gabrielides, Brinks Hofer Gilson & Lione, of Chicago, Illinois, argued for defendants-appellees. With him on the brief was Nicholas G. De La Torre.

Appealed from: United States District Court for the Northern District of Illinois

Senior Judge George M. Marovich

# United States Court of Appeals for the Federal Circuit

04-1397


MARK THATCHER and DECKERS OUTDOOR CORPORATION,
(Successor in Interest to Mark Thatcher),

Plaintiff-Appellants,

v.

KOHL'S DEPARTMENT STORES, INC. and KOHL'S CORPORATION,

Defendants-Appellees,

and

ASSOCIATED FOOTWEAR, INC.,

Defendant.


_____

DECIDED:  February 10, 2005
_____


Before MICHEL[*], Chief Judge, MAYER[**], and LINN, Circuit Judges.

MAYER, Circuit Judge.

Deckers Outdoor Corporation ("Deckers") appeals the ruling of the United States District Court for the Northern District of Illinois, dismissing its motion for a rule to show cause for lack of standing.  Thatcher v. Kohl's Dep't Stores, Inc., No. 97-CV-4746 (N.D.

_____

[*]     Paul R. Michel assumed the position of Chief Judge on December 25, 2004.

[**]    Haldane Robert Mayer vacated the position of Chief Judge on December 24, 2004.

Ill. Mar. 9, 2004). Because the consent judgment entered into between Mark Thatcher and Kohl's Department Stores, Inc. and Kohl's Corporation (collectively "Kohl's") does not give Deckers the right to enforce the judgment against Kohl's, we affirm.

Background

Deckers filed the motion for a rule to show cause to enforce a consent judgment entered into by Mark Thatcher and Kohl's, which settled a suit brought in July 1997 by Thatcher, also in the Northern District of Illinois. The complaint of the original suit alleged patent infringement, copyright infringement, trade dress infringement, and unfair competition by Kohl's. The source of the action was Thatcher's conception and development of a footwear product known commercially as the TEVA® sandal. According to Deckers, the allegedly infringing products were marketed under the designation "Bay Area Trader" and were sold at certain Kohl's stores in 1997.

The settlement included the filing of an amended complaint, which named Associated Footwear, Inc., the supplier of the Bay Area Trader sandals to Kohl's, as an additional defendant, and an agreement to the entry of a consent judgment settling the dispute. In pertinent part, the consent judgment recited that the "trade dress [of the TEVA® sandal] is a distinctive and valid trade dress," and: "On entry of this judgment Defendant corporations, their servants, employees, successors-in-interest, subsidiaries and all persons acting under, in concert with, or for them, including the supplier Associated Footwear, Inc., are permanently enjoined from directly or indirectly making or causing to be made, selling or causing to be sold, or using or causing to be used any sandals employing the trade dress of the Plaintiff or confusingly similar trade dress."

(emphasis added). The consent judgment goes on to identify three types of trade dress found in United States Patent No. 4,793,075 ("the '075 patent").

The judgment incorporates a similar permanent injunction preventing Kohl's from violating Thatcher's '075 patent rights. The paragraph discussing Kohl's obligation to avoid infringing activity also applies to Kohl's "agents, servants, employees, <u>successors-in-interest</u>, subsidiaries and all persons acting under, in concert with, or for them. . . ." (emphasis added). Both the complaint and the consent judgment refer to Thatcher as "MARK THATCHER, an individual, Plaintiff," and neither make reference to Deckers. As to Thatcher's rights and obligations, the consent decree is devoid of language of assignability, such as the "successors-in-interest" language used when discussing Kohl's obligations. No one other than Thatcher was expressly given the right to proceed with a contempt action to enforce the judgment under the terms of the consent judgment.

Deckers acquired all intellectual property rights for the TEVA® patents and trade dress via a November 25, 2002 agreement with Thatcher. As a result, Deckers also purchased the right to "all contracts, claims, rights, causes of action, [and] judgments . . . related to the Business and Intellectual Property Assets." In 2003, Deckers discovered an alleged violation of the 1997 consent judgment by Kohl's. It believed a sandal labeled as "Pacific Trail" and sold in certain Kohl's stores in Illinois was an exact replica of a TEVA® sandal covered by the consent judgment. As the purported successor-in-interest to Thatcher, Deckers filed a motion for a rule to show cause, seeking to: (1) impose sanctions for civil contempt; (2) coerce obedience to the consent

judgment; and (3) compensate Deckers for losses. Kohl's moved to dismiss because Deckers, as assignee, lacked standing.

Relying heavily on United States v. Armour & Co., 402 U.S. 673 (1971), the district court ruled that Deckers lacked standing to enforce the 1997 consent judgment. It held "that the scope of a consent judgment must be discerned within its four corners . . . ." Recognizing the absence of language giving Thatcher the power to assign his rights, or for Thatcher's "successor" to enforce his rights, the court reasoned "that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it, even though they were intended to be benefitted [sic] by it." (quoting Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975)). The court determined that the consent judgment only allowed enforcement by Thatcher because the parties failed to extend the judgment to Thatcher's "successors-in-interest" as they did for Kohl's. Deckers filed a motion for reconsideration that was denied on April 5, 2004. Because the original claim for relief arose under the patent laws, 28 U.S.C. § 1338(a), and the consent judgment disposing of the case contained a provision retaining jurisdiction for purposes of enforcement, we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). See Gjerlov v. Schuyler Labs., Inc., 131 F.3d 1016, 1019 (Fed. Cir. 1997).

## Discussion

"Generally, interpretation of a settlement agreement is not an issue unique to patent law, even if arising in the context of a patent infringement suit." Novamedix, Ltd. v. NDM Acquisition Corp., 166 F.3d 1177, 1180 (Fed. Cir. 1999). Accordingly, we apply the law of the appropriate regional circuit, which in this case is the Seventh. See

04-1397                                    4

Waymark Corp. v. Porta Sys. Corp., 334 F.3d 1358, 1362 (Fed. Cir. 2003).  In the Seventh Circuit, a dismissal for lack of standing is reviewed de novo.  Doe v. County of Montgomery, 41 F.3d 1156, 1158 (7th Cir. 1994).

The consent judgment serves as a carefully crafted settlement agreement between the parties.  The Seventh Circuit views a consent decree or a consent judgment as a form of contract, and, as such, the rules of contract interpretation apply.  Ferrell v. Pierce, 743 F.2d 454, 461 (7th Cir. 1984); see also Diversey Lever, Inc. v. Ecolab, Inc., 191 F.3d 1350, 1352 (Fed. Cir. 1999).  "The plain meaning of language of a contract or consent decree is a pure question of law, subject to de novo review by the appellate court."  South v. Rowe, 759 F.2d 610, 613 (7th Cir. 1985) (citation omitted).  However, "if the intent of the parties is not unambiguously expressed by the language of the decree, the district court may review extrinsic evidence and enter subsidiary factual findings as to the parties' intent, which are reviewed only for clear error."  Id.

The parties did not include a choice of law provision in the consent judgment; accordingly, we apply the law of Illinois where appropriate.  See Gjerlov, 131 F.3d at 1020 (settlement agreements in patent cases should not be governed by federal common law but instead by state contract law).  In Illinois, "an agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used.  It is not to be changed by extrinsic evidence."  Western Ill. Oil Co. v. Thompson, 186 N.E.2d 285, 287 (Ill. 1962).  "This approach is sometimes referred to as the 'four corners' rule."  Air Safety v. Teachers Realty Corp., 706 N.E.2d 882, 884 (Ill. 1999).  "In applying this rule, a court initially looks to the language of a

contract alone. . . . If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." Id. (citations omitted). Accord Goluba v. Sch. Dist. of Ripon, 45 F.3d 1035, 1037-38 & n.5 (7th Cir. 1995) (explicit terms of consent decree control unless the terms are facially ambiguous); Foster v. Hallco Mfg. Co., 947 F.2d 469, 481 (Fed. Cir. 1991) ("[T]he scope of a consent decree is limited to its terms and . . . its meaning should not be strained.").

Here, there is no ambiguity in the language of the consent judgment; the issue is whether Thatcher could assign his right of enforcement to another party in the absence of such language. Deckers believes that in the absence of language prohibiting assignability the consent judgment should be freely assignable to it, as successor in interest, citing Plumb v. Fluid Pump Service, 124 F.3d 849, 864 (7th Cir. 1997) ("[E]lementary contract law provides that upon a valid and unqualified assignment the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor." (citation omitted)). Examining the contract as a whole, and in light of Armour, we disagree.

Armour promotes the underlying policy that consent judgments must be construed in a manner that preserves the position for which the parties bargained, because the judgment reflects a compromise between hostile litigants. Thus, Armour makes clear that while consent judgments have the attributes of contracts, they are fundamentally different from contracts in not only reflecting an agreement on terms but also a resolution and compromise of contested legal positions in matters that are the subject of litigation.

Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it . . . . [T]he instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.

402 U.S. at 681-82.

There is nothing expressly set out in the consent judgment between Thatcher and Kohl's extending Thatcher's rights to any third party, including any "successor-in-interest." This silence is the functional equivalent of the parties' express intent to exclude language of assignment. Equally as telling is that the consent judgment specifies successors and assigns when listing Kohl's obligations. It provides that it is enforceable against "Defendant corporations, their servants, employees, successors-in-interest, subsidiaries and all persons acting under, in concert with, or for them. . . ." When the inclusion of these provisions is contrasted with the absence of any provision permitting anyone other than Thatcher to enforce his rights under the consent judgment, the absence becomes profound. Indeed, around the same time Thatcher sued Kohl's, he also sued Wal-Mart for allegedly infringing the same trade dress. In settling that case, Thatcher and Wal-Mart both bound their "successors and assigns." Thatcher and Deckers must live with the consequence of failing to include similar language of assignability here.

## Conclusion

The judgment of the United States District Court for the Northern District of Illinois is affirmed.

## AFFIRMED