2022 IL App (1st) 220288-U

THIRD DIVISION
November 30, 2022

No. 1-22-0288

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| KENNETH BRUCKI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 19 CH 7197 |
| ORLAND FIRE PROTECTION DISTRICT, ORLAND | ) | |
| FIRE PROTECTION DISTRICT PENSION BOARD OF | ) | |
| TRUSTEES, TRUSTEE GEORGE SCHICK, TRUSTEE | ) | Honorable |
| NICK ANASTOS, TRUSTEE KEVIN KITCHEN, | ) | David B. Atkins, |
| TRUSTEE MICHAEL SCHOFIELD, and TRUSTEE JEFF | ) | Judge Presiding. |
| RUCHNIEWICZ, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice McBride and Justice Gordon concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Reversing the judgment of a pension board regarding the effect of a former fire chief's paid administrative leave on the calculation of his pension benefits.

¶ 2    This appeal involves a dispute between a firefighters' pension fund and a former fire chief regarding the calculation of the chief's pension.  Kenneth Brucki (Brucki), the former fire chief of the Orland Fire Protection District (District), contends that a 4-1/2-month period that he was on paid administrative leave prior to his retirement should count toward the calculation of

his pensionable salary. He also asserts that an annual salary adjustment – which increased his salary by 3% shortly before his retirement date – should be included in the pensionable salary calculation. After conducting hearings and obtaining an advisory opinion from the Illinois Department of Insurance, the Orland Fire Protection District Pension Board of Trustees (Board) found that Brucki's final date of service was August 20, 2015 – prior to his administrative leave – and that his annual pensionable salary was $181,200, *i.e.*, the 3% adjustment was not included.

¶ 3     Brucki filed a complaint for administrative review under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)), and the circuit court of Cook County affirmed the judgment of the Board. In the instant appeal, Brucki challenges the Board's calculation of his pension benefits and contends that the Board proceedings violated his due process rights. As discussed herein, we reverse the decision of the Board and the circuit court and remand with instructions to recalculate and award pension benefits to Brucki based on a final date of service of January 4, 2016, and an annual salary amount which includes the 3% adjustment – $186,449.

¶ 4                                      BACKGROUND

¶ 5                         *Employment Contract and Retirement Agreement*

¶ 6     The District and Brucki entered into a three-year employment contract on June 1, 2013, whereby Brucki was retained as the "chief/administrator" (chief). The contract provided for an annual salary adjustment of 3% or the cost of living, whichever is greater. The contract also delineated bases for termination, including (a) by mutual written agreement of Brucki and the board of trustees of the District and (b) for "cause," as defined in the contract.

¶ 7     Brucki was placed on paid administrative leave on August 21, 2015. After negotiations, on October 14, 2015, Brucki and the District executed a retirement agreement and general release (retirement agreement), which was intended to resolve any disagreements, *e.g.*, relating

to Brucki's employment with the District, without any admission of liability or wrongdoing. The retirement agreement provided that he would continue to be on paid administrative leave through January 4, 2016 – his deferred retirement date and the date of his termination of employment. Brucki agreed to pay $12,500 as reimbursement for charges on the District's credit cards.

¶ 8    The retirement agreement stated that Brucki was to remain in his appointed rank of chief during his leave and was entitled to compensation in accordance with the District's policies and "existing agreements." The District agreed not to take action prior to his retirement which would diminish "any current monetary employment benefit," other than discontinuing his right to use the District's property, including cell phones and vehicles. The retirement agreement further stated that Brucki would continue to receive his compensation "through regular payroll processes during his paid leave, less all applicable withholdings calculated at his current rate of pay."

¶ 9    The retirement agreement provided that it was the whole agreement between Brucki and the District and that it superseded any and all prior agreements between the parties, including his employment contract, which was expressly voided by the retirement agreement. Nevertheless, in a letter dated February 23, 2016, the District stated that Brucki was entitled to payment for his unused vacation days in accordance with his employment contract. As Brucki apparently had not made the $12,500 payment required by the retirement agreement, such amount was deducted from checks sent by the District to Brucki relating to unused vacation and sick days.

¶ 10                    *Pension Application and Initial Board Proceedings*

¶ 11    After his 50th birthday in October 2017, Brucki was entitled to a pension. In his pension application, he listed his last day worked as January 4, 2016, and his annual pensionable salary as $186,449, which included the 3% adjustment on January 1, 2016. The pension fund submitted

paperwork indicating that his last day was August 20, 2015, and his salary was $181,220.

¶ 12    During a meeting on December 6, 2017, the Board discussed the calculation of Brucki's pension. The Board's attorney, Cary Collins (Collins), expressed concern that there may have been an artificial "spike" in Brucki's pensionable salary and that the Board was not consulted prior to the execution of the retirement agreement.

¶ 13    Brucki was present without counsel; he was willing to answer the Board's questions but not under oath. He stated that he agreed to the early expiration of his employment contract due to differences in management philosophy with the District. Brucki acknowledged he was asked to remain at home and to not report for duty after August 20, 2015. He maintained, however, that he had retired and was not "terminated." He disagreed with Collins' assessment that he had retired under a "void contract," *i.e.*, the employment contract. Brucki confirmed that he had been receiving a pension based on a pensionable salary of $181,220 and a final work date of August 20, 2015, but he argued that the calculation should have been based on a higher pensionable salary ($186,449) and a later final work date (January 4, 2016).

¶ 14    During the December 2017 session, Collins indicated that he wished to obtain an opinion from the Public Pension Division of the Illinois Department of Insurance (Department) regarding the calculation of Brucki's pension. On May 7, 2018, Collins sent a letter to the Department requesting an opinion, as well as an explanatory memorandum and supporting materials.

¶ 15                    *Advisory Opinion from the Department*

¶ 16    In a letter dated August 21, 2018, the Department provided an advisory opinion regarding Brucki's pension calculation, based on the information provided by Collins. The Department noted that while the Pension Code bars unpaid leave exceeding 30 days from being included in creditable service (40 ILCS 5/4-108(a) (West 2018)), the Pension Code does not specifically

address the treatment of paid leave. The Department found that it would be reasonable that a paid leave of absence would count toward creditable service – if the firefighter's salary was paid and if contributions were taken on that salary – as the firefighter would still be a member of the fire department and "such conclusion is not otherwise barred by the Pension Code."

¶ 17     As to Brucki's agreements with the District, the Department opined that the execution of the retirement agreement did not qualify as one of the delineated bases for terminating the employment contract. The Department thus found that the parties intended the retirement agreement to be a modification of the original employment contract. Based on language in the retirement agreement, the Department further found that the parties intended to maintain Brucki's "current base salary" for the duration of his administrative leave.

¶ 18     The Department then reviewed certain provisions of the Municipal Code (65 ILCS 5/10-2.1-6.3(b) (West 2018)) and the Pension Code (40 ILCS 5/4-106(b) (West 2018)), including the definition of "firefighter." The Department found that Brucki was not a "firefighter" pursuant to the Pension Code during his paid administrative leave, as he was not expected to routinely perform firefighter duties during his leave; the Department opined that he served in a position similar to a reserve or paid-on-call firefighter. Although seemingly inconsistent with its characterization of the retirement agreement as a "modification" of the employment contract, the Department then stated that the retirement agreement voided Brucki's employment contract, including the provision in the employment contract regarding the 3% annual salary adjustment.

¶ 19     The Department ultimately found that Brucki's pension should be calculated based on his salary on August 21, 2015 – the first day of his paid administrative leave – and that no creditable service should be awarded for the leave period.

¶ 20                    *Additional Proceedings and Board Decision*

¶ 21    At a session on March 5, 2019, Collins (the Board's attorney) indicated that the issue of the calculation of Brucki's salary was "concluded" during an earlier Board meeting on December 6, 2018,[1] based on the Department's advisory opinion.  According to Collins, Brucki's attorney, Patrick Walsh (Walsh), subsequently requested "reconsideration" of the December 6 decision.  Walsh disagreed with Collins's characterization of his request for a hearing.  Walsh maintained that the Board had not previously filed a decision, and thus there was nothing to "reconsider."

¶ 22    Walsh then raised a number of substantive arguments.  He asserted that the memorandum from Collins requesting an advisory opinion from the Department was slanted against Brucki. Walsh challenged the Department's analysis of the employment contract and the retirement agreement.  He requested an opportunity to seek clarification from the Department as to whether the retirement agreement modified the employment contract or voided it in its entirety.  Brucki then testified, in part, that all nonunion employees received the 3% pay increase.

¶ 23    The Board agreed to permit Walsh to seek clarification from the Department.  By that time, however, the Department had ceased its practice of providing advisory opinions. Following a vote on May 14, 2019, the Board entered a written decision which relied on the Department's advisory opinion and awarded pension benefits at the rate Brucki already had been receiving, *i.e.*, without the 3% salary increase or creditable service for the period of paid leave.

¶ 24                         *Circuit Court Proceedings*

¶ 25    Brucki filed a complaint pursuant to the Administrative Review Law in the circuit court

---

[1] Collins referred to a November 6, 2018 meeting and a December 6, 2018 meeting.  The correct date appears to be December 6, 2018; the record on appeal does not include a transcript of this meeting. Brucki did not attend the December 6, 2018 meeting, and he denied receiving notice thereof.

of Cook County against the District, the Board, and the individual trustees of the Board; the individual trustees were subsequently dismissed. In his brief, Brucki argued that the Board violated his due process rights by, among other things, misrepresenting the procedural posture of the proceedings during the March 5, 2019 meeting. Brucki further asserted that the Board erred in its reliance on a "factually inaccurate" advisory opinion from the Department. Brucki also maintained that the parties did not intend for the retirement agreement to render the employment contract void. The Board challenged Brucki's contentions, arguing in part that the Department's interpretation of the law should be entitled to substantial deference.

¶ 26     In an order entered on January 27, 2022, the circuit court found that the case involved both a factual issue – *i.e.*, whether Brucki was on call during the period of paid leave – and a legal issue – *i.e.*, whether the paid leave was creditable service. Applying a "clearly erroneous" standard, the circuit court affirmed the judgment of the Board. Brucki filed a timely appeal.

¶ 27                                  ANALYSIS

¶ 28     Brucki raises two primary arguments on appeal: that the Board erred in its calculation of his pension benefits and, in the alternative, that he was denied a fair and impartial hearing. The Board challenges these contentions. As discussed below, we find the first issue (the pension calculation) to be dispositive, and we thus need not address Brucki's alternative argument.

¶ 29     We begin our analysis with the applicable standard of review.

¶ 30                            *Standard of Review*

¶ 31     Article 4 of the Pension Code addresses the firefighters' pension fund for municipalities with a population of 500,000 or fewer people, as is the case herein. 40 ILCS 5/4-101 *et seq.* (West 2018). See *Philpott v. Board of Trustees of the City of Charleston Firefighters' Pension Fund*, 397 Ill. App. 3d 369, 373 (2010). Under the Pension Code, any proceeding for the judicial

review of a final decision of the Board is governed by the Administrative Review Law. See

40 ILCS 5/4-139 (West 2018). "As in any proceeding for administrative review, our role in this

case is to review the decision of the administrative agency, rather than that of the circuit court."

*Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 551 (2009). Accord *Marconi*

*v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006).

¶ 32    The applicable standard of review depends on whether the question is one of law, one of

fact, or a mixed question of law and fact. *Village of Hanover Park v. Board of Trustees of the*

*Village of Hanover Park Police Pension Fund*, 2021 IL App (2d) 200380, ¶ 57. Rulings on

factual questions will be reversed only if they are against the manifest weight of the evidence,

legal questions are reviewed *de novo*, and mixed questions of law and fact are reviewed under

the "clearly erroneous" standard. *Id.* Accord *Cronholm v. Board of Trustees of the Lockport*

*Fire Protection District Firefighters' Pension Fund*, 2016 IL App (3d) 150122, ¶ 12. Regardless

of the standard of review, a plaintiff in an administrative proceeding bears the burden of proof.

*Id.*; *Carrillo v. Park Ridge Firefighters' Pension Fund*, 2014 IL App (1st) 130656, ¶ 21.

¶ 33    The issue of Brucki's pension calculation appears to present a mixed question of law and

fact, subject to the clearly erroneous standard. A decision is clearly erroneous where we are left

with the firm and definite conviction that a mistake has been made. *Hanover Park Police*

*Pension Fund*, 2021 IL App (2d) 200380, ¶ 58. Accord *Village of Chicago Ridge v. Chicago*

*Ridge Firefighters' Pension Board of Trustees*, 2016 IL App (1st) 152089, ¶ 8. See also *City of*

*Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998) (noting the "clearly

erroneous" standard is "between a manifest weight of the evidence standard and a *de novo*

standard"). Although the clearly erroneous standard is deferential, we will not blindly defer to

the Board's decision. *Hanover Park Police Pension Fund*, 2021 IL App (2d) 200380, ¶ 58.

¶ 34                                   *Board's Calculation of Brucki's Pension*

¶ 35    Section 4-109(a) of the Pension Code provides, in part, as follows:

> "A firefighter age 50 or more with 20 or more years of creditable service, who is no longer in service as a firefighter, shall receive a monthly pension of 1/2 the monthly salary attached to the rank held by him or her in the fire service at the date of retirement.
>
> The monthly pension shall be increased by 1/12 of 2.5% of such monthly salary for each additional month over 20 years of service through 30 years of service, to a maximum of 75% of such monthly salary."  40 ILCS 5/4-109(a) (West 2018).

The parties agree that Brucki had more than 20 years of creditable service, as he was employed by the Pleasantview Fire Department for more than 17-1/2 years prior to joining the District. Rather, their disagreement centers on the "monthly salary attached to the rank held by him *** in the fire service at the date of retirement." *Id.*  The Board ultimately decided that Brucki "is entitled only to benefits as of the last date of August 20, 2015 at the salary attached to the rank of Fire Chief as of August 21, 2015."

¶ 36    In reaching its decision, the Board expressly relied on the advisory opinion from the Department dated August 21, 2018, which was issued in accordance with section 1A-106 of the Pension Code.  See 40 ILCS 5/1A-106 (West 2018).  While we recognize that we must afford considerable deference to the Department's interpretation of the Pension Code – as it was given the responsibility for providing advisory services to funds covered by the Pension Code "on all matters pertaining to their operations" (*id.*) – we are not bound to an administrative agency's interpretation of the law, and we will not afford deference if the interpretation was arbitrary,

capricious, or manifestly contrary to the statute. *Cronholm*, 2016 IL App (3d) 150122, ¶ 14. See also *Roselle Police Pension Board*, 232 Ill. 2d at 559.

¶ 37     As discussed below, we find the advisory opinion issued by the Department to be of limited value. The opinion was expressly based on the information provided in the memorandum prepared by Collins, the Board's attorney. Although presumably unintended, the information submitted to the Department was less than neutral. The Department relied on such information in crafting its advisory opinion, and then the Board circularly relied on the advisory opinion in reaching its decision. Based on our review, we reject the Board's (and Department's) interpretation of both the applicable statutory definitions and the language and effect of the agreements between the District and Brucki.

¶ 38     In his memorandum entitled "Facts" which was provided to the Department, Collins employed language which was arguably slanted against Brucki, *e.g.*, he referred to the retirement agreement as a "severance contract" and a "termination agreement," and he attached a media article regarding Brucki being "under investigation." Collins also relayed that the Board believed that the retirement agreement was "an effort to 'spike' Chief Brucki's compensation." The memorandum concluded with the Board's request for "an opinion consistent with its belief that the pension calculations contained in Exhibit B" – which presumably were based on the earlier date and the lower salary – "are correct as to salary and creditable service."

¶ 39     The Department then issued an advisory opinion which was explicitly based on the assertions made by Collins and the information he had provided. The Department reviewed section 4-108(a) of the Pension Code, which provides: "In computing creditable service, *** leaves of absence without pay exceeding 30 days in any one year shall not be counted[.]" 40 ILCS 5/4-108(a) (West 2018). The Department opined that it is "reasonable that paid leave(s)

of absence would count towards creditable service, if salary was paid and contributions were taken on that salary, because the firefighter is still a member of the department and such conclusion is not otherwise barred by the Pension Code."

¶ 40    At this point, our analysis diverges from that of the Department. The Department found that Brucki was not a "firefighter" under the applicable provisions of the Pension Code and Municipal Code during the time of his paid administrative leave. The Municipal Code defines "firefighter," in pertinent part, as follows:

> "[A]ny person who has been *** appointed to a fire department or fire protection district *** except that the following persons are not included:  part-time firefighters; auxiliary, reserve, or voluntary firefighters, including paid-on-call firefighters; clerks and dispatchers or other civilian employees of a fire department or fire protection district who are not routinely expected to perform firefighter duties; and elected officials."  65 ILCS 5/10-2.1-6.3 (West 2018).

The applicable provision of the Pension Code defines "firefighter" as "any person employed by a city in its fire service as a firefighter, fire engineer, marine engineer, fire pilot, bomb technician, or scuba diver; and, in any of these positions whose duties include those of a firefighter and are certified in the same manner as a firefighter in that city."  40 ILCS 5/4-106(b) (West 2018).

¶ 41    Based on the foregoing definitions, the Department found that Brucki was not a firefighter during his paid administrative leave. Simply put, we reject this finding. Although the Department found that Brucki "was not expected to routinely perform firefighter duties" during his leave, such language in the Municipal Code definition only addresses "clerks and dispatchers or other civilian employees" of the District. 65 ILCS 5/10-2.1-6.3 (West 2018).  Brucki – as the chief and as a certified firefighter – was not a civilian employee of the District. The

Department's restrictive view is contrary to the principle that the provisions governing firemen's pensions must be liberally construed in favor of the applicant (*Evert v. Board of Trustees of the Firefighters' Pension Fund of the City of Lake Forest*, 180 Ill. App. 3d 656, 659 (1989)).

¶ 42    In its advisory opinion, the Department next discussed the definition of "salary." Section 118.1(d) of the Pension Code defines salary as "the annual salary *** attached to the firefighter's rank *** excluding any 'overtime pay,' 'holiday pay,' 'bonus pay,' 'merit pay,' or any other cash benefit not included in the salary so established."  40 ILCS 5/4-118.1 (West 2018).  Although the Department initially characterized Brucki's retirement agreement as a "modification" of his employment contract, the Department ultimately opined that the retirement agreement "voided" the employment contract, including the 3% annual salary adjustment provided therein.  The Department found that the 3% increase was a "bonus" and thus not included in the definition of "salary" for purposes of Brucki's pension calculation.

¶ 43    Based on our review of the retirement agreement, we reject the Department's analysis. When reviewing a contract, a court initially looks solely to the language of the contract.  *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999).  If the language is facially unambiguous, the contract is interpreted without the use of parol evidence.  *Id.*  If the language of the contract is susceptible to more than one meaning, then an ambiguity is present, and parol evidence may be used to assist the trier of fact in resolving the ambiguity.  *Id.* at 462-63.

¶ 44    The retirement agreement provides that it is the whole agreement between Brucki and the District and that all prior agreements – including the employment contract – are voided.  The retirement agreement also provides, however, that during Brucki's leave, he "shall remain in his appointed rank of Fire Chief and shall be entitled to all benefits and compensation applicable to the rank of Fire Chief in accordance with the terms of [District] policies *and existing*

12

*agreements.*" (Emphasis added.) Reviewing the retirement agreement as a whole, we find it to be ambiguous as to the continued validity and import of the employment contract. *Id.*

¶ 45    According to the Board, the District's agreement not to take any action to diminish "any current monetary employment benefit" did not apply to the 3% increase, as it was not a "current" benefit given that the employment contract was "voided." The record, however, does not support the Board's interpretation. The employment contract provided for an annual salary adjustment of 3% or the cost of living, whichever was greater. While the Board contends that Brucki never received the higher salary (with the 3% adjustment), his final paycheck – issued on January 11, 2016 – appears to have included an increase. On February 23, 2016, the District sent Brucki three checks for his unused sick days and vacation days; the accompanying letter expressly referenced his employment contract. We also note that the amounts returned to Brucki for the sick and vacation days appear to include the 3% salary increase. The foregoing suggests that the employment contract – and the annual salary adjustment provided therein – was not negated by the retirement agreement.

¶ 46    We further observe that certain cases cited by the Board are distinguishable. A number of the cases address instances where additional compensation was paid to state or municipal employees with the express aim of increasing their final salaries in anticipation of retirement so as to enhance their pensions. Such efforts to manipulate retirement benefits have been roundly rejected. *E.g.*, *Chicago Ridge Firefighters' Pension Board of Trustees*, 2016 IL App (1st) 152089, ¶ 18 (finding that a 20% buyout increase in a firefighter's salary on his last day of work was not approved through an appropriations ordinance of the municipality and could not be included in the calculation of the firefighter's pensionable salary); *Sedlock v. Board of Trustees of the Police Pension Fund of the City of Ottawa*, 367 Ill. App. 3d 526, 528 (2006) (addressing

an effort to raise a police chief's salary from $64,000 to more than $84,000 one week prior to his retirement). Conversely, Brucki's pay increase was not an unduly enhanced benefit; the annual increase was expressly provided for in his 2013 employment contract with the District.

¶ 47    In conclusion, while we recognize that the Board has a fiduciary obligation to all participants and beneficiaries of the pension fund – and that the Board cannot and should not pay a beneficiary more than that to which he is entitled (*Philpott*, 397 Ill. App. 3d at 372) – we are left with the firm and definite conviction that a mistake has been made in the instant case. We thus reverse the decision of the Board and the circuit court and remand with instructions to recalculate and award pension benefits to Brucki based on a final date of service of January 4, 2016, and an annual salary amount which includes the 3% adjustment – $186,449. In light of the foregoing, we need not address Brucki's alternative argument regarding due process.

¶ 48                                CONCLUSION

¶ 49    Circuit court judgment reversed; Board decision reversed; remanded with instructions.