**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210610-U

Order filed June 12, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| MARTI A. RAVE, TANNER J. RAVE, and KYLE O. RAVE, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0610 Circuit No. 18-L-31 |
| DAVID HAUSLEIN, | ) ) ) | The Honorable Bruce Fehrenbacher, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Holdridge and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The circuit court erred when it granted summary judgment in favor of the defendant, as the real estate contract was not void or unenforceable for a lack of clarity in the property-description provision.

¶ 2    The plaintiffs, Marti Rave, Tanner Rave, and Kyle Rave, sued the defendant, David Hauslein, for breach of contract regarding his failure to purchase certain property. Hauslein filed a motion for summary judgment, alleging that the contract was void and unenforceable, which

the circuit court granted. On appeal, the plaintiffs argue that the court erred when it granted summary judgment in favor of Hauslein. We reverse and remand for further proceedings.

¶ 3                                            I. BACKGROUND

¶ 4        On March 2, 2018, the plaintiffs entered into a contract with Hauslein for the sale of certain property for $65,000. In part, the contract required payment by March 12, 2018, and described the property as follows:

"SEC 22 T26N R3W FELKERS SUBD 2ND EXT LOT 32 NE 1/4

Pin: 02-02-22-108-005

LEGAL DESCRIPTIONS AND PINS TO COME FROM ALLIANCE LAND TITLE, INC.

(exact legal descriptions shall be provided on title commitment.)"

¶ 5        The contract also contained two other provisions relevant to this appeal. First, the contract required that the plaintiffs provide a written title commitment to Hauslein no less than 14 days before closing. Second, the contract contained the following integration clause:

"This Contract represents the entire agreement of the parties. No covenants, agreements, representations or warranties of any kind have been made by any party or agent of a party to this Contract, except as specifically set forth herein. The parties expressly acknowledge that, in executing this Contract, they have not relied on any prior or contemporaneous oral or written representations, statements or agreements, except as expressly set forth herein. Any modifications of the terms of this Contract must be in writing and signed by both parties, in the absence of which the terms of this Contract shall govern."

2

¶ 6         E-mails included in the record indicated that on February 22, 2018, Brenda Duncan, an employee of Rave Homes, sent a plat of what the employee stated was 1830 Kern, Lot 4, to plaintiff Tanner Rave. Tanner Rave, in turn, forwarded that e-mail to Hauslein, including that the asking price was $70,000 and that he would "also look for a better plat[.]" Later that day, Tanner Rave sent Hauslein another plat via e-mail. This second plat showed Lot 4 as well as portions of Lots 5 and 19. It also included two separate legal descriptions: one of the tracts comprised of the portions of Lots 5 and 19 and one of Lot 4 that included the portions of Lots 5 and 19.

¶ 7         Duncan sent an e-mail to Hauslein on February 23 stating that Tanner Rave told her Hauslein was "purchasing the lot at 1830 Kern in Washington." She further stated that Rave Homes's attorney would be compiling the necessary paperwork soon. On February 26, Hauslein sent Duncan an e-mail asking for an update. She replied that the paperwork had not been completed, adding that "I know they did the title work already[.]"

¶ 8         An administrative assistant for the plaintiffs' attorney e-mailed Duncan a sales contract on February 26, which Duncan forwarded to Hauslein. A corrected version of the contract was sent to Hauslein on February 28. Hauslein signed the contract and on March 2 sent it to Duncan, who forwarded it to the plaintiffs' attorney's office.

¶ 9         On March 6, Hauslein e-mailed Duncan with a request for an update on closing. Duncan replied that the plaintiffs' attorney's office was waiting on the title search for the property. The following day, Duncan e-mailed Hauslein the closing documents, including the title work, and asked him whether he preferred March 9 or 12 for closing. Hauslein did not respond; he also forwarded the documents to his attorney on the morning of March 9.

¶ 10         The title commitment reflected a date of February 28, 2018, in the amount of $65,000 to Hauslein, and contained the following legal description:

3

> "Lot 4 in TIMBER CREEKS ESTATES, SECTION THREE, a
> Subdivision of part of the Northwest Quarter of Section 22, Township 26
> North, Range 3 West of the Third Principal Meridian, as shown on Plat
> recorded February 3, 2005 in Plat Book 'BBB', Pages 12-13, as Document
> No. 05-02350, situated in TAZEWELL COUNTY, ILLINOIS."

¶ 11 On March 9, Hauslein's attorney sent a letter to the plaintiffs' attorney to state that he would not be proceeding with closing because the legal description of the property contained in the contract was not accurate and because he was not provided with a title commitment within 14 days of closing.

¶ 12 On March 20, the plaintiffs filed a civil complaint against Hauslein, alleging a breach of contract for failing to purchase the property, which it described as "1830 Kern, Washington, Illinois." The complaint also added the following *accurate* legal description:

> "Lot 4 in Timber Creek Estates, Section 3, a subdivision of part of the
> Northwest ¼ of Section 22, Township 26 North, Range 3 West, of the
> Third Principal Meridian, as shown on Plat recorded February 3, 2005, in
> Plat Book "BBB", Pages 12-13, as Document Number 05-02350, situated
> in Tazewell County, Illinois."

¶ 13 The complaint alleged that the plaintiffs lost an interested buyer when Hauslein represented that he intended to purchase the property "and that Plaintiffs bear the risk that they will be required to sell the Property at a reduced price, or risk significant time on the market, and the associated loss resulting therefrom." The complaint sought damages exceeding $50,000.

¶ 14 In his answer, Hauslein alleged that the property described in the plaintiffs' complaint was not the property he agreed to purchase. He further claimed that there was no meeting of the

4

minds between the parties and therefore no enforceable contract. He also alleged that the plaintiffs "did not and could not convey the property they promised to convey[.]"

¶ 15    Hauslein was deposed in 2019. In part, he stated that in early 2018, he drove past an unimproved property in Washington that had a "Rave Homes" sign with a telephone number on it. He called the number and began the process of purchasing the property. He also stated that the second plat e-mailed to him—the one containing the legal description of Lot 4 with parts of Lots 5 and 19—was the basis for his continued interest in the property. He admitted that there were no references in the e-mails to multiple lots but that there was in the contract itself. He also admitted that he received the title commitment from the plaintiffs, adding that he "assume[d]" it was in the closing documents sent to him on March 7, 2018.

¶ 16    Tanner Rave was also deposed in 2019. In part, he stated that he owned a lot in Washington equally with the other two plaintiffs. He admitted that nowhere in the contract did it state that Hauslein was purchasing 1830 Kern in Washington or Lot 4. He also admitted that the legal description in the contract did not describe what the plaintiffs intended to sell and that it did not describe a property that the plaintiffs ever owned. Regarding the plats he sent to Hauslein via e-mail, he stated that the first plat he sent was not accurate regarding Lots 5 and 6 and the second plat he sent did not contain a legal description of Lot 4 by itself. He also stated that the plaintiffs could deliver legal title to the property identified by the property identification number (PIN) included in the contract.

¶ 17    Regarding the "interested buyer" the plaintiffs allegedly lost when Hauslein agreed to purchase the property, Tanner Rave stated that an individual had called to inquire about the property. He relayed some information about the property to the caller, and the caller said he would be in touch in the future. The caller never did so.

¶ 18        On February 1, 2021, Hauslein filed a motion for summary judgment, alleging that the contract was void and unenforceable for failing to include a certain and definite description of the subject property and because the plaintiffs "did not provide evidence of title." In their response, the plaintiffs admitted that the contract contained an erroneous legal description of the property but stated that the PIN it listed was correct. Thus, the plaintiffs alleged, *inter alia*, that the dispute was over whether they intended to convey a single lot or whether Hauslein intended to purchase more than just Lot 4.

¶ 19        The circuit court held a hearing on Hauslein's motion for summary judgment on June 14, 2021, and issued its written ruling granting Hauslein's motion the following day. In so ruling, the court found that the parties agreed the property legally described in the contract was not a description of the property the plaintiffs intended to sell or Hauslein intended to purchase. Additionally, the court found that the property legally described appeared to have no connection to any transaction contemplated by the parties. The court further found that the incorrect legal description was not a mere scrivener's error.

¶ 20        After their motion to reconsider was denied, the plaintiffs appealed.

¶ 21                                II. ANALYSIS

¶ 22        On appeal, the plaintiffs argue that the circuit court erred when it granted summary judgment in favor of Hauslein. More specifically, the plaintiffs argue that the contract was ambiguous regarding the property intended to be conveyed and, therefore, parol evidence is admissible to resolve the ambiguity. Because the ambiguity presents genuine issues of material fact, the plaintiffs continue, summary judgment was inappropriate.

¶ 23        Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

6

that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). When considering whether to grant summary judgment, "a court must construe the evidence in the record strictly against the movant and should grant summary judgment only if the movant's right to a judgment is clear and free from doubt." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. We review a circuit court's decision on summary judgment *de novo*. *Id.*

¶ 24 Traditionally, Illinois courts have applied what is often called the "four corners" rule when interpreting contracts. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). Our supreme court has defined this rule as follows:

> "An agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." *Western Illinois Oil Co. v. Thompson*, 26 Ill. 2d 287, 291 (1962).

¶ 25 Under the "four corners" rule, "[i]f the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence." *Air Safety, Inc.*, 185 Ill. 2d at 462. A contract is facially ambiguous if it is susceptible to more than one meaning and, in such circumstances, the court may use parol evidence to resolve the ambiguity. *Id.* at 462-63.

¶ 26 The problem with the plaintiffs' argument regarding parol evidence is that the contract contained an integration clause. "[W]here parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *Air Safety, Inc.*, 185 Ill. 2d at 464. The integration clause in the parties' contract stated the following:

> "This Contract represents the entire agreement of the parties. No
> covenants, agreements, representations or warranties of any kind have
> been made by any party or agent of a party to this Contract, except as
> specifically set forth herein. The parties expressly acknowledge that, in
> executing this Contract, they have not relied on any prior or
> contemporaneous oral or written representations, statements or
> agreements, except as expressly set forth herein. Any modifications of the
> terms of this Contract must be in writing and signed by both parties, in the
> absence of which the terms of this Contract shall govern."

In *Air Safety, Inc.*, our supreme court stated that integration clauses such as the one used in this case

> "make[] clear that the negotiations leading to the written contract *are not*
> the agreement. Accordingly, considering extrinsic evidence of prior
> negotiations to create an 'extrinsic ambiguity' where *both* parties *explicitly*
> agree that such evidence will *not* be considered ignores the express
> intentions of the parties and renders integration clauses null." (Emphases
> in original.) *Id.* at 464-65.

Thus, even assuming the contract's description of the property intended to be conveyed were ambiguous, any parol evidence regarding the parties' intentions cannot be considered. See *id.*

¶ 27　　　Regarding the property description contained in the contract, it is undisputed that the lot-and-block description, "SEC 22 T26N R3W FELKERS SUBD 2ND EXT LOT 32 NE 1/4," describes a property that the plaintiffs never owned. It is also undisputed that the property tax identification number included in the contract was assigned to "Lot 4" in the Timber Creek

8

Estates subdivision, which was a property the plaintiffs in fact owned. However, the property-description provision also included language that exact legal descriptions and property tax identification numbers—both in the plural—would be forthcoming in the title commitment. Thus, while the property-description provision contained clear inconsistencies, the parties expressly agreed to be bound by any legal descriptions included in the forthcoming title commitment. That document, which Hauslein admitted to receiving, indisputably described the same property assigned to the tax identification number that was included in the contract. Thus, any questions arising from the contract's poorly drafted property-description provision were answered by the legal description contained in the title commitment. Hauslein agreed to be bound by this procedure. It is disingenuous for him to claim now, as he did in his motion for summary judgment, that the contract was void and unenforceable for failing to include a certain and definite description of the subject property and that it was somehow dispositive of the property-description question that he did not have the title commitment at the time he signed the contract. *Cf. Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991) (holding that "[a] contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract").

¶ 28    Under the circumstances presented by this case, we hold that the contract at issue was not void or unenforceable for a lack of clarity in the property-description provision as claimed by Hauslein in his motion for summary judgment. Accordingly, we hold that the circuit court erred when it granted summary judgment in favor of Hauslein. We emphasize that our decision in this appeal is not a decision on the merits of the plaintiffs' case or a commentary on the validity of the contract under some basis other than a lack of clarity in the property-description provision.

9

¶ 29 The judgment of the circuit court of Tazewell County is reversed, and the cause is remanded for further proceedings.

¶ 30 III. CONCLUSION

¶ 31 For the foregoing reasons, the judgment of the circuit court of Tazewell County is reversed and the cause is remanded for further proceedings.

¶ 32 Reversed and remanded.