2025 IL App (1st) 240562-U
Order filed: August 21, 2025

FIRST DISTRICT
FOURTH DIVISION

Nos. 1-24-0562 and 1-24-0900 (consolidated)

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| RHET MITCHELL, | ) | Cook County |
| | ) | |
| Petitioner-Appellee, | ) | |
| v. | ) | No. 2020 D 7035 |
| | ) | |
| BURNETTA HERRON, | ) | Honorable |
| | ) | Lloyd James Brooks, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  In this dissolution of marriage case, we vacated the *in limine* order limiting the evidence respondent could present in support of her claim for reimbursement of the household and family living expenses she had paid during the marriage. We remanded for further proceedings.

¶ 2    This is a dissolution of marriage case. The court conducted a bench trial and divided the marital property between the petitioner, Rhet Mitchell, and the respondent, Burnetta Herron. On appeal, respondent argues that the court erred when it granted a motion *in limine* limiting the evidence she could present in support of her claim for reimbursement for the household and family living expenses she had paid during the marriage. Respondent also argues that the court erred in its allocation of the mortgage on the marital residence. We vacate the *in limine* order and the

portion of the judgment adjudicating respondent's reimbursement claims and remand for further proceedings. We affirm the portion of the judgment allocating the mortgage.

¶ 3    The parties were married on May 8, 2010, and had two children during their marriage. Four days prior to their wedding, on May 4, 2010, the parties entered into a prenuptial agreement (PNA) which had been prepared by respondent. In pertinent part, paragraph 2E of the PNA stated:

> "Regardless of which party owns a residence in which the parties are living during the marriage, both parties shall make equal (unless otherwise agreed to in writing by the parties) financial contributions to the parties' ongoing household and family living expenses. In the event that the parties do not otherwise agree in writing and either party has not complied with this provision, at the time of the entry of a Judgment for Dissolution of Marriage or Legal Separation, the other party has the right to receive reimbursement for his or her portion of the funds as set forth in this Agreement as if the other party had fully complied with his obligations under this paragraph."

¶ 4    On October 2, 2020, petitioner filed for dissolution of the marriage. Respondent filed a counter-petition and a motion for a declaratory judgment that the PNA is valid and binding. The declaratory judgment motion was withdrawn when the parties entered into an agreed order stating the PNA was valid, enforceable, and binding on the parties. On December 27, 2022, the court entered an agreed order bifurcating the proceedings and dissolving the marriage *instanter*, while reserving all remaining financial matters for the completion of trial.

¶ 5    Respondent retained an expert forensic accountant, Amber Rychetsky, who reviewed the parties' checking and savings accounts, credit card accounts, and expenditures during the marriage and prepared a report listing thousands of financial transactions involving the parties between May 2010 through December 31, 2021, formatted into a spreadsheet. Rychetsky listed each transaction

as personal or marital and sorted the marital expenditures into eight separate categories: insurance, mortgage, homeowners association (HOA) fees, groceries, utilities, car payments, childcare, and extracurricular activities for the children. Using those eight categories, Rychetsky calculated the total marital expenses from May 2010 through August 2019, to be $1,712,299 and that petitioner's 50% share of those expenses was $856,149. Petitioner had contributed only $335,274 towards those expenses, leaving a shortfall of $520,875 which was required to be reimbursed to respondent.

¶ 6    Rychetsky also listed four additional categories of expenses that "could be" considered marital expenses covered under the PNA: those expenditures were for storage, housekeeping, dining out, and gasoline. Rychetsky calculated the total marital expenses from May 2010 through August 2019 including those four additional categories to be $1,904,936 and that petitioner's 50% share of those expenses under the PNA was $952,468. Petitioner had contributed only $369,435 towards those expenses, leaving a shortfall of $583,033 which was required to be reimbursed to respondent.

¶ 7    Petitioner filed a two-count motion *in limine* to bar Rychetsky's report, arguing in count I that the issue of reimbursement was not justiciable because respondent failed to raise the issue in her counter-petition for dissolution of marriage or any subsequent pleading. Count II alleged that Rychetsky's report was speculative and unreliable as it failed to provide adequate support for its finding that petitioner owed respondent over $500,000 as reimbursement for household and family living expenses. Specifically, petitioner contended that Rychetsky reviewed only "a portion" of his checking and credit card account statements and that many of those statements were in control of the respective financial institutions and outside of his possession and had never been produced to Rychetsky.  Rychetsky also failed to ever interview petitioner and instead relied only on respondent's "self-serving statements" regarding the amount of money owed to her. Further,

Rychetsky failed to obtain receipts and invoices for the "vast majority" of the expenditures included in her report and she made a number of "unreasonable" assumptions casting "serious doubt" on the report's reliability. For example, Rychetsky assumed that any Amazon purchase by respondent was a household or family living expense required to be reimbursed by petitioner, without considering that at least some of those purchases could have been personal to respondent and not reimbursable.

¶ 8    On July 7, 2022, the circuit court held a hearing on the *in limine* motion. Respondent has not provided us with a transcript of the hearing or an acceptable substitute, such as a bystander's report or agreed statement of facts, under Illinois Supreme Court Rule 323 (eff. July 1, 2017). Following the hearing, the court entered an order denying count I of the motion *in limine*, finding that the issue of reimbursement was justiciable. The court continued its ruling on count II until the first day of trial; however, the order also stated that "Respondent is hereby barred from presenting any evidence for any reimbursement claims, pursuant to paragraph 2.E. of the parties' Prenuptial agreement, for any expenses that predated January 1, 2015."

¶ 9    The cause proceeded to a bench trial. Before hearing any evidence, the court heard arguments on count II of respondent's motion *in limine*, which alleged that Rychetsky's report finding that petitioner owed respondent in excess of $500,000 for reimbursement of household and family living expenses should be inadmissible in its entirety because it was speculative and unreliable.

¶ 10    The court denied count II of the *in limine* motion, ruling that "[t]he potential limitations of the report affect the persuasiveness of the report ***. However, the limitations of the report are not so pervasive as to rise to the level of making the entire report speculative." The court stated that it would consider Rychetsky's report with regard to respondent's claims that petitioner should

reimburse her for household and family living expenses she paid on or after January 1, 2015. The court reiterated that it would *not* consider Rychetsky's report in support of any claim that petitioner should reimburse respondent for household and family living expenses she paid prior to January 1, 2015.

¶ 11    At trial, respondent testified that she is a surgeon who worked at Advocate Trinity Hospital from 2005 until August 1, 2022, when she began working at Mt. Sinai Chicago Hospital. While working at Advocate, respondent earned around $220,000 per year. At Mt. Sinai, she earns $450,000 yearly. Respondent met petitioner in 2005 and they were engaged in 2009. They agreed to a PNA pursuant to which each party was responsible for half of the household and family living expenses during the marriage, and that if one party did not contribute his/her equal share, the other party could seek reimbursement at the time of dissolution.

¶ 12    Respondent testified that they married on May 8, 2010, at which time they resided in a condominium at 125 E. 13th Street. Petitioner traveled on business and was home for the weekends. The expenses associated with living in the condominium included the mortgage, HOA fees, car payment, insurance, storage, groceries, gas, electric, and cable. After the children were born, there were additional expenses for their various extracurricular activities, including music school, dance classes, gymnastics, summer camp and after school care. Respondent paid the mortgage, HOA fees, condominium insurance and car payments out of her own banking accounts.

¶ 13    Every weekend after petitioner came home from his work-related travel, they discussed the various bills, including for the mortgage, HOA, utilities, cable, and childcare, and they argued about his contribution to the payment of all the expenses. Respondent would ask petitioner when he intended to pay his fair share. Petitioner always responded that he would pay when he gets his next bonus.

¶ 14    Respondent testified that the parties bought a new home on August 22, 2019. Nine days later, on August 31, 2019, they separated. Respondent stated that she would like to refinance the house in her name only and buy out petitioner's interest.

¶ 15    Respondent testified she paid her mother, Paula Herron, $2,000 per month for childcare. The monies were deposited into a joint checking account held by her and Paula, which respondent sometimes withdrew and deposited into her own personal checking account.

¶ 16    Paula testified that she sometimes assisted in caring for the parties' minor children. There was no regular schedule; instead, she cared for them as needed by respondent. Paula never asked for payment but respondent made regular deposits of monies into a joint checking account that they shared. Paula used monies from her own individual accounts to pay her own bills; she could not recall the last time she withdrew any monies from the joint account that she shared with respondent.

¶ 17    Rychetsky testified consistently with her report that petitioner owed respondent over $500,000 as reimbursement for marital expenses which respondent had paid during their marriage.

¶ 18    Petitioner testified that he works for Infosys Consulting. His income varies from year to year but averages about $245,000 per year. Prior to marrying respondent, they signed a PNA. Petitioner testified that none of the 12 categories of marital expenditures set forth in Rychetsky's report are specified in the PNA and that not all of them were agreed to by the parties as constituting reimbursable household and family living expenses.  Consistent with his pretrial motion *in limine*, petitioner testified that Rychetsky's report was suspect because she never interviewed him and she did not consider all of his checking and credit card statements and did not accurately reflect all the payments made by him for the family's expenses. Rychetsky also made a number of improper assumptions in her report; for example, she incorrectly assumed that all expenses petitioner

incurred outside Illinois were personal to him, when in fact a number of them were household and/or family living expenses for which respondent owed him 50%.

¶ 19    Petitioner explained that after coming back from their honeymoon in June 2010, he and respondent discussed how to divide or share expenses, and they agreed that he would pay respondent $500 every two weeks and also be responsible for paying the cable bill, the dry-cleaning bill, and the housecleaning bill.

¶ 20    The parties had another discussion about how to share expenses in 2013, after the birth of their daughter. They agreed that petitioner would increase his biweekly payments to respondent to $600 and that he would add their daughter to his insurance and pay her medical bills, while continuing to pay the cable bill, dry cleaning bill, and housecleaning bill.

¶ 21    Petitioner testified that they had a third and final discussion about sharing expenses in 2015, after the birth of their son. They agreed that petitioner would increase his biweekly payments to respondent to $1,100, add their son to his insurance, continue to pay the cable bill, dry cleaning bill, and housecleaning bill and that he would contribute to the grocery bills and to their daughter's extracurricular activities. The increase in the biweekly payments was meant to "cover not only the mortgage but also portions of the car as well as some of the kids' expenses."

¶ 22    Petitioner testified that other than the three discussions in 2010, 2013, and 2015, respondent never asked him to contribute more monies for the payment of household and family living expenses. Petitioner stated that he owed respondent no further monies under the PNA.

¶ 23    With respect to respondent's purported payment of childcare expenses to Paula, petitioner testified that respondent did not actually pay Paula for caring for their children. The monies that respondent deposited into the joint checking account with Paula were eventually transferred back to respondent's individual checking account.

¶ 24    After the completion of the trial, the court issued its findings of fact and conclusions of law. First, the court found that the term "household and family living expenses" as used in the PNA is ambiguous as it can cover a wide range and type of expenditures and that the PNA was not clear as to which particular expenditures were covered. The court stated that "any ambiguity in the use of [the term "household and family living expenses] should be held against [respondent] as the drafter of the Agreement." Given the ambiguity, the court looked to parol evidence, specifically, to petitioner's testimony regarding the three conversations the parties had in 2010, 2013, and 2015 about the sharing of expenses and found his testimony to be credible. Accordingly, the court limited the reimbursable expenses covered under the PNA to those expenses discussed in the three conversations in 2010, 2013, and 2015.

¶ 25    The court examined Rychetsky's report and testimony and noted that her calculations as to the amounts owed were based on a definition of "marital expenses" that included 8-12 categories; however, the PNA provided for the reimbursement of "household and family living expenses," not the 8-12 categories of "marital expenses" listed in the report. Additionally, the court found some of the assumptions made by Rychetsky in preparing her report were "problematic." For example, respondent's Amazon charges were listed as reimbursable expenses, however there was "little to no evidence" to show what was purchased, and thus there was no way to know whether those charges were actually household and family living expenses or merely personal expenses for respondent.

¶ 26    The court stated that Rychetsky's report was "more helpful in providing evidence of the parties' payment history." The court used the payment history to determine how much monies petitioner had actually paid for the household and family living expenses described in their conversations in 2010, 2013, and 2015. The court determined that for the period from January 1,

2015, to August 31, 2019, petitioner was required to pay $218,557.99 for cable bills, dry cleaning bills, child medical care, extracurricular activities, and the biweekly payments to respondent. Petitioner actually paid $213,046.86, leaving a balance due of $5,511.13. For the period from September 1, 2019, to April 13, 2021, petitioner was required to pay $63,551.15, of which he paid $44,671, leaving a balance of $18,880.15. For the period from April 14, 2021, to the date of trial, the court determined that petitioner owed an additional $21,748.30 in missed mortgage and tax payments and other "carrying expenses" for the former marital home. After adding all the amounts owed by petitioner during the three separate periods, the court awarded respondent a total of $46,139.58 for all of her reimbursement claims.

¶ 27    With respect to respondent's testimony that she paid her mother Paula $2,000 per month in childcare and required reimbursement therefor, the court found "there is sufficient evidence" that respondent's transfers to Paula were not for childcare. The court noted that respondent "transfers the money from an account titled jointly to her and to her mother. [Respondent] then takes the very same money that is supposed to compensate her mother for providing childcare and then uses it for her own purposes. *** [T]he evidence shows both [respondent] and Paula treated the money as belonging to [respondent] at all times." The court determined that to the extent Paula was providing childcare, she was doing it gratuitously and that respondent was not entitled to have petitioner reimburse her for childcare expenses she was not paying herself.

¶ 28    With respect to the allocation of the marital home, the court determined that the home should be refinanced in respondent's name, with respondent buying out petitioner's interest. The court found from the evidence at trial that the value of the home was $890,000, with a mortgage balance of $712,050.86. Pursuant to the PNA, each party was entitled to half the value of the home ($445,000). The PNA also required that all marital debts, including the mortgage, be divided in

proportion to the parties' respective incomes. Since respondent made $450,000 (or 64.7% of the parties' total income) and petitioner made about $245,000 (35.3%), respondent was required to pay $460,696.91 of the mortgage (64.7%) and petitioner was required to pay $251,353.95 (35.3%). The court subtracted petitioner's $251,353.95 share of the mortgage from his $445,000 share of the value of the home and awarded him $193,646.05 as the buyout of his interest.

¶ 29 Respondent filed a motion to reconsider, arguing that the court erred by barring her from presenting her claim that petitioner should reimburse her for his share of the household and family living expenses she paid prior to January 1, 2015. Respondent also argued that the court miscalculated the amount of reimbursable expenses incurred on and after January 1, 2015, and erred in its allocation of the mortgage on the marital residence.

¶ 30 The court denied respondent's motion to reconsider the limitation of time for the reimbursement claim, stating:

"[T]he Court has substantial concerns about the reliability and evidentiary value of the expert's report and testimony [for the period prior to January 1, 2015]. *** [T]he report relies upon assumptions and self-serving interviews. The underlying assumptions weaken over time. Although the report also includes a review of bank statements and credit card statement[s], those documents do little to tell the details of expenditures or the purpose of the expenditures. To be clear, the Court's ruling on the admissibility of the expert report may have been different if better evidence existed as to the expenses [respondent] sought reimbursement for.

*** If [respondent] expected a judgment in a court of law, she certainly needs evidence to support her claims. [Respondent] asked the Court to enter a judgment for the

reimbursement of expenses dating back over ten years without sufficient credible documentation. The Court evaluated the evidence and gave it due weight.

In short, [respondent] misunderstands the Court's July 7, 2022, Order. It is not a limitation of her contractual rights. Instead, it is a limitation of the evidence the Court was going to consider due to the unreliability of the evidence [respondent] was offering to present. The Court stands on its evidentiary ruling."

¶ 31    The court next considered respondent's argument that it had miscalculated the amount owed to her by petitioner as reimbursement for household and family living expenses incurred on and after January 1, 2015. The court reiterated that the term "household and family living expenses" was ambiguous, requiring it to consider parol evidence, specifically, the parties' conversations in 2010, 2013, and 2015 to determine "what the parties agreed to at the time of contracting." The court determined that the intent of the PNA, as construed by the parties' conversations in 2010, 2013, and 2015, required petitioner to reimburse respondent for 50% of the mortgage, HOA fees, homeowners' insurance, groceries, children's extra-curricular activities, and car payments. Petitioner also was required to pay 100% of the cable bill, dry cleaning bill, children's medical care, family dining, automobile insurance payments, and gasoline in addition to making the biweekly payment of $1,100. The court recalculated the amounts paid by the parties for all these expenses on and after January 1, 2015, and amended its judgment to award respondent $58,988.65 in reimbursement from petitioner for his share of the expenses which he had failed to pay.

¶ 32    The court denied the motion to reconsider its allocation of the mortgage on the marital residence. Respondent filed her notice of appeal on March 18, 2024. On April 17, 2024, the court entered an order sanctioning respondent for intentionally or recklessly filing a financial affidavit

with respect to childcare expenses. Respondent filed a second notice of appeal on April 22, 2024, and we consolidated the two appeals. In her appellant's brief, though, respondent makes no arguments for reversal of the April 17 sanctions order and therefore has forfeited review thereof. See Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). We proceed to address respondent's appeal of the court's judgment on her reimbursement claim.

¶ 33    On appeal, respondent argues that the circuit court erred in its *in limine* ruling by barring her from presenting evidence "for any reimbursement claims" for the household and family living expenses she paid prior to January 1, 2015. Respondent argues that under the PNA, she was entitled to reimbursement from petitioner for his portion of the household and family living expenses for the *entire* marriage, including the period from May 8, 2010, to December 31, 2014.

¶ 34    Petitioner contends that respondent forfeited the issue by failing to make an offer of proof as to Rychetsky's testimony regarding the amount of reimbursable household and family living expenses for the period from May 8, 2010, to December 31, 2014. Generally, when a motion *in limine* is granted, an adequate offer of proof at trial is required to preserve the issue for review unless the trial court clearly understood the nature and character of the evidence sought to be introduced. *Snelson v. Kamm*, 204 Ill. 2d 1, 23 (2003) and *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495 (2002). An offer of proof was not required under the facts of this case, as the circuit court was well-aware of the substance of Rychetsky's testimony given that her report containing her findings regarding reimbursable household and family living expenses had been filed with the court in May 2022 and was the subject of the *in limine* hearing. We find no forfeiture and proceed to address the merits of the issue.

¶ 35    A prenuptial agreement is a contract for which the rules governing the interpretation of contracts apply. *Kranzler v. Kranzler*, 2018 IL App (1st) 171169, ¶¶ 39, 95. The primary objective

when construing a contract is to give effect to the intent of the parties. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). The plain language of the contract itself is the best indicator of that intent. *Id.* The contract should be read as a whole, with each provision viewed in light of the other provisions. *Id.* A court will not "interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Id.* at 442. If the language is unambiguous, the agreement is interpreted without resort to parol evidence. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). However, if the court finds that the language is susceptible to more than one meaning, then an ambiguity exists and parol evidence may be used to aid in resolving the ambiguity. *Id.* at 462-63. Moreover, any ambiguity in the terms of a contract is construed against its drafter. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (1998). Interpretation of a contract is a question of law reviewed *de novo*. *In re Marriage of Velasquez*, 295 Ill. App. 3d 350, 356 (1998).

¶ 36     The PNA here expressly and unambiguously provides that both parties shall make equal financial contributions to their household and family living expenses "during the marriage," and that if one party does not comply with this provision, the other party has the right to receive reimbursement for the payments made on the non-complying party's behalf. The parties here were married on May 8, 2010, and the dissolution judgment was entered on December 27, 2022. Under the express language of the PNA, respondent was entitled to reimbursement for 50% of the household and family living expenses for which she paid (and for which petitioner did not contribute) throughout the duration of the marriage from May 8, 2010, to December 27, 2022. In its July 7, 2022, order, though, the circuit court effectively rewrote the PNA by barring respondent from presenting any evidence in support of her reimbursement claims for petitioner's share of the household and family living expenses which she paid prior to January 1, 2015. The court thereby

limited the timeframe for recovery of those expenses for only the period from January 1, 2015, through December 27, 2022. The court's interpretation of the PNA to so limit respondent's timeframe for recovery of petitioner's share of the household and family living expenses was contrary to the plain and obvious meaning of the language used and was error under our *de novo* review of the PNA.

¶ 37    Petitioner contends, though, that the circuit court's decision to limit respondent's timeframe for recovery was not based on any misinterpretation of the PNA but rather was an evidentiary decision based on its substantial concerns regarding the reliability of Rychetsky's report. Where the circuit court's ruling was not based on an error of law but instead was an evidentiary decision based on the facts and circumstances of the case, our review is for an abuse of discretion. *In re Commitment of Brown*, 2021 IL App (1st) 191606, ¶ 90. Accordingly, we consider whether the court abused its discretion here by limiting respondent's timeframe for recovery based on its concerns regarding the reliability of Rychetsky's report.

¶ 38    The court's ruling here was made on July 7, 2022, after a hearing on petitioner's motion *in limine*. Petitioner initially argues that respondent failed to provide a transcript of the July 7 hearing or an acceptable Rule 323 substitute, and as such we should presume that the ruling was not in error. Petitioner cites *Foutch v. O'Bryant*, 99 Ill. 2d 389 (1984), the seminal case holding that the appellant bears the burden of providing us a sufficient record for review and in the absence of such a record we presume that the order conformed with the law and had an adequate factual basis. *Id.* at 391-92.

¶ 39    Unlike in *Foutch*, where the lack of a transcript made it otherwise impossible to determine the reason for the trial court's ruling, the court here explained the basis for its July 7 ruling when granting in part and denying in part respondent's motion to reconsider, thereby providing us with

a sufficiently complete record such that we may address respondent's appeal. The court explained that Rychetsky's report was the central piece of evidence supporting respondent's reimbursement claims for the period predating January 1, 2015, yet the report relied on assumptions and self-serving interviews that "weaken over time." Further, the documents Rychetsky relied on in her report "do little to tell the details of expenditures or the purpose of the expenditures." The court concluded that Rychetsky had failed to provide "credible documentation" supporting her findings for the amounts petitioner allegedly owed in reimbursement for household and family living expenses predating January 1, 2015, and as such the court barred respondent from presenting evidence "for any reimbursement claims" for the time period of May 8, 2010, to December 31, 2014.

¶ 40    The court's ruling barring any evidence, and in particular Rychetsky's report, for any reimbursement claim for May 8, 2010, through December 31, 2014, was an abuse of discretion. Rychetsky's report of over 400 pages is included in the appellate record and contains listings of thousands of the parties' bank and credit card transactions from May 2010 through December 2021. The circuit court found that the bank and credit card transactions relied upon by Rychetsky for determining the household and family living expenditures predating January 1, 2015, were insufficiently detailed and hence unreliable. Therefore, the court barred respondent from presenting Rychetsky's report in support of her reimbursement claims for the period from May 8, 2010, through December 31, 2014. The court did not find any similar unreliability for the bank and credit card transactions relied upon by Rychetsky when considering the household and family living expenses *postdating* December 31, 2014, and therefore it admitted her report in support of respondent's reimbursement claims for the period from January 1, 2015, to December 27, 2022.

¶ 41    However, our review of Rychetsky's report shows that the bank and credit card transactions relied upon by her for determining the household and family living expenditures from January 1, 2015, to December 27, 2022, were not in any way more detailed or specific than those prior to January 1, 2015. Rychetsky relied on the same types of records of financial transactions, with the same degree of specificity, when considering the household and family living expenditures both before and after January 1, 2015. On this record, then, there was simply no basis for the court to admit and consider Rychetsky's report in support of respondent's reimbursement claims for the period from January 1, 2015, through December 27, 2022, yet to bar admission of Rychetsky's report for respondent's reimbursement claims for the period from May 8, 2010, through December 31, 2014. Accordingly, we vacate the July 7, 2022, *in limine* order and the portion of the August 2, 2023, judgment adjudicating respondent's reimbursement claims, and remand for a hearing on respondent's reimbursement claims covering the period from May 8, 2010, through December 31, 2014. Any reimbursement awarded respondent for the household and family living expenses she paid from May 8, 2010, through December 31, 2014, shall be added to the $58,988.65 awarded her for the period postdating December 31, 2014.

¶ 42    Next, respondent argues that the circuit court erred by finding the term "household and family living expenses" as used in the PNA to be ambiguous and by considering parol evidence to determine its meaning. Respondent specifically takes issue with the court considering petitioner's testimony regarding the three conversations the parties allegedly had in 2010, 2013, and 2015, limiting the scope of the term. Respondent contends that the court never should have considered the parties' oral modifications of the PNA, as section 6 of the Illinois Uniform Premarital Agreement Act expressly provides that "[a]fter marriage, a premarital agreement may be amended or revoked only by a written agreement signed by the parties." 750 ILCS 10/6 (West 2024).

¶ 43    We find no error under the facts of this case. As discussed, the parties' PNA is a contract subject to the rules of contract interpretation. *Kranzler*, 2018 IL App (1st) 171169, ¶ 39, ¶ 95. If the language of the PNA is unambiguous, it must be interpreted without resort to parol evidence. *Air Safety*, 185 Ill. 2d at 462. However, if an ambiguity exists such that the language of the PNA is susceptible to more than one meaning, then the court may use parol evidence to resolve the ambiguity. *Id.* at 462-63. "Where a contract is ambiguous, courts may determine the parties' intent by looking to the interpretation which the parties themselves have placed on the agreement as shown by their contemporaneous or subsequent acts or conduct." *Thread and Gage Co., Inc. v. Kucinski*, 116 Ill. App. 3d 178, 183 (1983). See also *In re Marriage of Whetstone*, 87 Ill. App. 3d 164, 167 (1980); *McLean County Bank v. Brokaw*, 119 Ill. 2d 405, 412 (1988). The determination of whether a contract is ambiguous is reviewed *de novo*. *Standlee v. Bostedt*, 2019 IL App (2d) 180325, ¶ 57.

¶ 44    The circuit court noted that while the PNA provides that the parties were required to make equal contributions to their "household and family living expenses" during the marriage, the PNA never defined which expenses fell within the category of "household and family living expenses." While the parties agreed at trial as to some of the expenses covered, such as the mortgage, HOA fees, and groceries, they disagreed over other expenses (such as the extent to which extracurricular and storage fees were covered). Respondent's expert Rychetsky also expressed confusion over the meaning of the term, as she prepared two different analyses of the expenses covered, one which considered eight expenses and another considering an additional four expenses that "could be" covered. On this record, we cannot say the court erred by determining that the term was ambiguous as to which expenses were covered and in considering parol evidence regarding the parties' conversations in 2010, 2013, and 2015 as an aid to interpreting its meaning while also construing

any ambiguity against respondent as the drafter of the PNA. As noted, any ambiguity in a contract is construed against its drafter. *Dowd*, 181 Ill. 2d at 479. Also, " '[w]hen a contract is ambiguous or silent on a disputed issue, a court may, in order to determine the intent of the parties at the time of contracting, consider the contemporaneous or subsequent acts of the parties to the contract' "). *Szafranski v. Dunston*, 2015 IL App (1st) 122975-B, ¶ 75 (quoting *Vole, Inc. v. Georgacopoulos*, 181 Ill. App. 3d 1012, 1021 (1989)).

¶ 45    Respondent questions the credibility of petitioner's testimony regarding the parties' conversations in 2010, 2013, and 2015. The court found that petitioner's testimony was credible and supported by documents showing he paid the bills as agreed to in their conversations. We defer to the circuit court's credibility determinations as it saw and heard the witnesses. *Standlee*, 2019 IL App (2d) 180325, ¶ 57.

¶ 46    Finally, respondent argues that the court erred in its allocation of the mortgage on the marital residence. The court determined to award respondent the home, subject to her buying out petitioner's interest. The court examined the PNA, which shows that each party was entitled to 50% of the value of the marital residence, with the mortgage being divided in proportion to the parties' respective incomes. The circuit court followed the PNA to the letter. The court found from the evidence at trial that the value of the home was $890,000, meaning that each party was entitled to $445,000. The mortgage balance was $712,050.86, which the court divided in proportion to their respective incomes. Since respondent made $450,000 or 64.7% of the parties' total income, and petitioner made $245,000 or 35.3%, the court ordered respondent to pay $460,696.61 of the mortgage (64.7%) and petitioner to pay $251,353.95 (35.3%). The court subtracted petitioner's $251,353.95 share of the mortgage from his $445,000 share of the value of the marital home and awarded him $193,646.05 as the buyout of his interest. We find no error.

¶ 47    Respondent further contends that the court erred in its ruling on her motion to reconsider. We find respondent's argument duplicative of the issues already addressed.

¶ 48    For all the foregoing reasons, we vacate the July 7, 2022, *in limine* order and the portion of the August 2, 2023, judgment adjudicating respondent's reimbursement claims, and remand for further proceedings. We affirm the portion of the judgment allocating the mortgage on the marital residence.

¶ 49    Affirmed in part and vacated in part; cause remanded with directions.